MAIN, Judge.
Shonelle Andre Jackson, appeals the circuit court’s summary dismissal of his Rule 32, Ala.R.Crim.P., petition for postconviction relief, challenging his capital-murder conviction and sentence of death, and his first-degree-theft conviction and sentence of life imprisonment.
On February 27, 1998, Jackson was convicted in the Montgomery Circuit Court of the intentional murder of Lefrick Moore during the course of a robbery, a capital offense, see § 13A-5-40(a)(2), Ala.Code 1975, and of theft in the first degree, a violation of § 13A-8-3, Ala.Code 1975. The jury recommended a sentence of life imprisonment without the possibility of parole for the capital offense. The trial court overrode the jury’s recommendation and sentenced Jackson to death by electrocution. This Court affirmed both convictions and sentences. Jackson v. State, 836 So.2d 915 (Ala.Crim.App.1999). The Alabama Supreme Court affirmed Jackson’s conviction and death sentence and denied his application for rehearing. Ex parte Jackson, 836 So.2d 979 (Ala.2002).
On July 30, 2003, Jackson filed a Rule 32, Ala.R.Crim.P., petition in the Montgomery Circuit Court, asserting a number of claims. On October 28, 2003, the State filed a response to the petition, challenging the claims in Jackson’s petition on preclu-sionary, pleading, and evidentiary grounds.
On February 26, 2004, the State filed a motion to dismiss a number of Jackson’s ineffective-assistance-of-counsel claims on the basis that there was no showing of prejudice in counsel’s performance as to those grounds because this Court, in the plain-error review on direct appeal, had found no manifest injustice with regard to the corresponding underlying substantive issues. The State also filed motions requesting that the circuit court afford Jackson an opportunity to adequately plead certain enumerated claims or summarily dismiss those claims as inadequately pleaded and that the circuit court summarily dismiss certain enumerated claims pursuant to the procedural bars in Rule 32.2(a). On March 1, 2004, the circuit court issued a series of written orders: one order dismissed a number of substantive claims as procedurally barred pursuant to Rule 32.2(a); one order summarily dismissed a number of Jackson’s ineffective-assistance-of-counsel allegations for failing to present a material issue of fact or law; and a third order afforded Jackson 30 days to amend certain substantive claims and ineffective- *429 assistanee-of-counsel allegations to meet the pleading requirements in Rules 32.8 and 32.6(b), or risk having those claims summarily dismissed.
On March 31, 2004, Jackson filed an amended petition and moved the court for discovery of the district attorney’s file and institutional records; Jackson also filed a pleading objecting to the circuit court’s adopting the State’s proposed orders as its own. The circuit court, over the State’s objection, granted Jackson’s discovery requests. The State sought mandamus relief in this Court, and on March 18, 2005, this Court granted the State’s mandamus petition and ordered the circuit court to vacate its ruling on Jackson’s discovery motion. Jackson v. State of Alabama, 910 So.2d 797 (Ala.Crim.App.2005). On April 21, 2006, Jackson filed a second amended petition raising several claims in support of postconviction relief, including claims of juror misconduct.[1]
Jackson asserted that at least one of the jurors, including Juror J.B., who were not sequestered, performed outside investigation by visiting the crime scene during the trial and then sharing these findings with other members of the jury and that Jurors W.D., D.D., J.G., and M.C. performed outside experimentation by testing bullets to discover if the type of gun Jackson was allegedly carrying at the time of the offense would have fired the bullet that killed the victim and passed these findings on to members of the jury.
Jackson also asserted that during voir dire, several jurors, including Jurors D.D., A.D.W., W.D., B.E., J.G., M.C., and C.C., failed to disclose that they were familiar with the Smiley Court area in Montgomery, where the crime took place and where Jackson’s mother lived. He further claimed that during voir dire, several jurors failed to disclose that they knew prosecutors, the trial judge, or other individuals in law enforcement or associated with the case, alleging that Juror R.H. failed to disclose that he knew Judge William Gordon, then a circuit judge in Montgomery County and Montgomery District Attorney Ellen Brooks, who presented the case; Juror D.D. failed to disclose that he knew Judge Charles Price, a circuit judge in Montgomery County; Juror W.D. failed to disclose that he knew Judge Charles Price and that he had close friends in law enforcement; Juror J.B. failed to disclose that his cousin is Judge Gillis; Juror A.D.W. failed to disclose that he had several friends in the Montgomery Police Department; and Juror M.J. failed to disclose that he had close friends in law enforcement. He averred that several jurors, including Jurors R.H. and M.J., failed to disclose that they owned guns in response to a question inquiring about gun ownership. Finally, Jackson claimed that several jurors failed to reveal critical information about themselves, alleging that Juror M.C. failed to disclose that he had heard about the case before trial and that he was a retired United States postal worker who had at one time delivered mail to the Smiley Court area; that Jurors J.B., C.C., and J.G. did not disclose that they had previously sat on a jury; that Jurors J.B. and R.H. failed to disclose that they had been or had family members who had been victims of crime; and that Juror M.J. failed to disclose that she had been involved in civil lawsuits.
In its motion to dismiss, the State responded that Jackson’s claims of juror misconduct were precluded from review under Rule 32.2(a)(3) and (a)(5), Ala. R.Crim.P., because, it said, the claims could have been but were not raised at trial or on appeal. Additionally, the State *430 argued that Jackson’s allegations of juror misconduct “should be dismissed because Jackson does not disclose the factual basis for these allegations.” (R. 75.)
In response to the State’s motion to dismiss, Jackson’s counsel argued:
“[T]he claims of juror misconduct which [Jackson] now asserts rendered his trial unconstitutional could not have been raised at trial, and thus necessarily could not have been raised on direct appeal, because trial counsel could not have had any information that jurors had failed to disclose information during voir dire or that the jurors had improperly considered extraneous evidence, including information about the bullets or information about the scene of the crime, in their deliberation. The fact that this information is entirely absent from the trial record confirms this point....
“Nor could these claims have been raised by appellate counsel. Following his trial, [Jackson’s] trial attorneys were allowed to withdraw from his case and the circuit court appointed new counsel, unfamiliar with the case, to represent [Jackson] on appeal. As [Jackson] stated in his second amended petition, appellate counsel did not receive the transcript in this case until August 20, 1998, nearly a month after the date by which a motion for new trial could have been filed. Second Amended Petition, at 67. Without the trial record, appellate counsel had no information about the jurors who served on the panel in this case and therefore could not have even begun attempting to acquire information about this misconduct. Because appellate counsel did not have the means to acquire this information, it was impossible for [Jackson] to raise his juror misconduct claims on appeal ....
[[Image here]]
“The State also argues that [Jackson’s] allegations of juror misconduct ‘should be dismissed because Jackson does not disclose the factual basis for these allegations.... [He] does not, for example, contend ... that any of the jurors have informed him or his collateral counsels the allegations in Part II [raising claims of juror misconduct] are true.’ State’s Motion to Dismiss, at 75. The State cites no law in support of its assertion that [Jackson] must produce, at the pleading stage, the source of the information in support of his allegations .... ”
(R. 826-27.)
The circuit court granted the State’s motion to dismiss and summarily dismissed Jackson’s petition on grounds that Jackson’s juror-misconduct claims were precluded from review because they could have been, but were not, raised in a motion for a new trial or on appeal, pursuant to Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P. The circuit court also found that the claims were insufficiently pleaded pursuant to Rule 32.3, Ala.R.Crim.P.
On appeal, Jackson reasserts the same arguments in support of his juror-misconduct claims that he raised in his Rule 32 petition and in his response to the State’s motion to dismiss. Jackson argues that because the alleged juror misconduct was not known to trial or appellate counsel and because appellate counsel did not have access to the record at the time his motion for a new trial was filed, the circuit court erroneously dismissed his juror-misconduct claims on procedural grounds.
Initially, we note:
“There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. *431 It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time ... after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussion in the jury room, jurors’ willingness to return an unpopular verdict, and the community’s trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror misconduct.”
Tanner v. United States, 483 U.S. 107, 120-21, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (citations omitted). However, there are situations where such an investigation is required. As the Alabama Supreme Court has held:
“Weighing heavily against the absolutism of a rule impeaching all extraneous matter verdicts is the well established rule that jury verdicts are presumed to be correct, and that this presumption is strengthened when the trial court, as here, refused to grant a new trial. Allred v. Dobbs, 280 Ala. 159, 190 So.2d 712 (1966). It is the head on collision course of these two dominant rules — the presumption of correctness of jury verdicts versus the right to a fair and impartial trial, governed exclusively by the evidence given from the witness stand and the law given by the court — that requires us to resolve this issue on a case by case basis.
“Only by individual consideration of all attending circumstances of each case can it be determined which one of these fundamental rules must give way in accommodation to the other. We are unwilling to say every extraneous matter verdict must be set aside absent a factual showing to the reasonable satisfaction of the trial judge that the verdict is the prejudicial result of such extraneous matters. See, for example, Clay v. City Council of Montgomery, 102 Ala. 297, 14 So. 646 (1893).”
Nichols v. Seaboard Coastline Ry. Co., 341 So.2d 671, 674 (Ala.1976). Rule 606(b), Ala.R.Evid., recognizes the important “distinction, under Alabama law, between ‘extraneous facts,’ the consideration of which by a jury or jurors may be sufficient to impeach a verdict, and the ‘debates and discussions of the jury,’ which are protected from inquiry.” Sharrief v. Gerlach, 798 So.2d 646, 652 (Ala.2001). See also Bethea v. Springhill Mem’l Hosp., 833 So.2d 1 (Ala.2002) (juror visiting a crime scene is one example of extraneous information that may warrant postverdict investigation); and Ex parte Dobyne, 805 So.2d 763 (Ala.2001) (some factors for resolving juror-misconduct allegations regarding voir dire include the remoteness of the matter inquired about, the materiality of the matter inquired about, the clarity of the questions asked, and the juror’s inadvertence or willfulness in failing to answer truthfully)-
In Ex parte Burgess, 21 So.3d 746 (Ala. 2008), the Alabama Supreme Court held that a juror-misconduct claim is cognizable in a Rule 32 petition and therefore not subject to the procedural bars of Rule 32.2, Ala.R.Crim.P., because trial counsel showed in the trial court that it could not have reasonably discovered the alleged juror misconduct in time to raise the claims in a motion for a new trial or on appeal. In so holding, the Alabama Supreme Court stated:
“It is unreasonable to hold that a defendant must uncover any and all juror misconduct in the form of inaccurate responses to voir dire examination in time to raise such claims in a motion for a new trial or on appeal. Requiring a defendant to raise such claims of juror *432 misconduct during the interval between the voir dire examination and the filing of posttrial motions places an impracticable burden on defendants.”
Burgess, 21 So.3d at 754.
Additionally, in Burgess, the Supreme Court noted that there was no evidence indicating that Burgess or his counsel suspected or should have suspected any misconduct on the part of the jurors. In this regard, the Supreme Court held:
“[I]t is unreasonable to require that a defendant, unaware of any failure to answer correctly questions posed during the voir dire examination, must contact each juror and ask whether he or she accurately and truthfully answered such questions. Jury service is sufficiently disruptive of a citizen’s regular duties without this Court announcing a rule that would routinely subject jurors to potentially insulting postverdict interrogation concerning their veracity. Absent any evidence that a telephone call to some or all the jurors would have been nothing more than a fishing expedition, we cannot hold on this record that Burgess’s claims are precluded.”
Id., 21 So.3d at 754-55.
Here, the circuit court found that the claim was barred because it could have been, but was not, raised at trial or on appeal. However, the circuit court did not have the benefit of the Alabama Supreme Court’s holding in Ex parte Burgess at the time it ruled on the petition. Thus, we remand this case for the circuit court to again consider Jackson’s juror-misconduct allegations in light of Burgess.
In remanding, we note that Rule 32.3, AIa.R.Crim. P., states that “[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.” Rule 32.6(b), Ala. R.Crim.P., states that “[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
“An evidentiary hearing on a [Rule 32] petition is required only if the petition is ‘meritorious on its face.’ Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is ‘meritorious on its face’ only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true. Ex parte Boat-might, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986).”
Moore v. State, 502 So.2d 819, 820 (Ala. 1986). Here, Jackson met his burden of pleading sufficiently and with specificity facts entitling him to an opportunity to prove his juror-misconduct claims if those claims are not procedurally barred. Therefore, if the circuit court determines that Jackson’s juror-misconduct claims are not procedurally barred, it should afford Jackson an opportunity to prove his claim as provided in Rule 32.9, Ala.R.Crim.P.
Due return shall be filed with this Court within 56 days of the date of this opinion and shall include the circuit court’s written findings and a transcript of the hearing, if one is conducted, and .any other evidence relied on by the court in making its findings.
REMANDED WITH INSTRUCTIONS.
WISE, P.J., and WELCH, WINDOM, and KELLUM, JJ., concur.

*433
On Return to Remand

BURKE, Judge.
Shonelle Andre Jackson, currently an inmate on death row at Holman Correctional Facility, appeals the circuit court’s dismissal of his petition for postconviction filed pursuant to Rule 82, Ala. R.Crim. P., attacking his capital-murder conviction and sentence of death.
In February 1998, Jackson was convicted of murdering Lefrick Moore during the course of a robbery, an offense defined as capital by § 13A-5-40(a)(2), AIa.Code 1975. Jackson was also convicted of stealing Lottie Flowers’s vehicle. The jury unanimously recommended that Jackson be sentenced to life imprisonment without the possibility of parole on the capital-murder conviction and to life imprisonment as a habitual felon on the theft conviction. The circuit court chose not to follow the jury’s recommendation and sentenced Jackson to death on the capital-murder conviction. Jackson’s convictions and his death sentence were affirmed by this Court on direct appeal. See Jackson v. State, 836 So.2d 915 (Ala.Crim.App.1999). The Alabama Supreme Court remanded Jackson’s case for the circuit court to hold an evidentiary hearing on the admissibility of Jackson’s statements to police. See Ex parte Jackson, 836 So.2d 973 (Ala.2001). The Supreme Court affirmed Jackson’s convictions and sentence on return to remand. See Ex parte Jackson, 836 So.2d 979 (Ala.2002). The United States Supreme Court denied certiorari review. See Jackson v. Alabama, 537 U.S. 1031, 123 S.Ct. 582, 154 L.Ed.2d 448 (2002). This Court issued its certificate of judgment on May 31, 2002.
In 2003, Jackson filed a postconviction petition attacking his capital-murder conviction and death sentence. In 2004 and 2006, Jackson filed amended petitions. The second amended petition raised claims of juror misconduct. Jackson alleged that a juror visited the crime scene, that jurors performed outside experiments, and that jurors failed to disclose information during voir dire examination. The State asserted that Jackson’s claims of juror misconduct were procedurally barred under Rules 32.2(a)(3), and (a)(5), Ala. R.Crim. P. The circuit court summarily dismissed the petition as precluded. Jackson appealed to this Court. In November 2009, we remanded this case to the circuit court in light of the Alabama Supreme Court’s decision in Ex parte Burgess, 21 So.3d 746 (Ala.2008), for that court to consider whether Jackson’s claims of juror-misconduct were in fact procedurally barred and, if not, to hold an evidentiary hearing on this claim. See Jackson v. State, 133 So.3d 420 (Ala.Crim.App.2009).[1]
The facts surrounding Jackson’s conviction are essential to evaluate the claims raised by Jackson on appeal. The circuit court set out the following facts in its order sentencing Jackson to death:
“The events which led to Moore’s homicide started April 24, 1997, and were unrelated to Moore. On that evening, ‘Cocomo’ slapped Jackson at a nightclub. The next day, April 25, Jackson determined to look for Cocomo and the tendencies of the evidence are that Jackson intended to do Cocomo physical injury, should he be found.
*434 “Jackson did not have a car. He approached Antonio Barnes about stealing a car for him. Barnes readily agreed, and Barnes and Jackson solicited ‘Wen-del’ to drive them to Brookview Apartments, where Jackson and Barnes stole Ms. Flowers’ car. Barnes actually broke into the car and Jackson stood lookout.
“Jackson, Barnes, Eric Williams, and Christopher Rudolph then commenced the search for Cocomo. Jackson was armed with a .380 caliber semiautomatic pistol; Barnes was armed with a .357 magnum handgun; Rudolph was armed with a 9 millimeter pistol; and Williams was armed with a shotgun. The search for Cocomo was futile; however, near the Smiley Court housing neighborhood, they saw Moore driving his car. Williams told the group that he was familiar with the car and the driver, and that the car had good music. Jackson then announced that ‘they’ were going to rob the people in Moore’s car. They stalked Moore until the opportunity presented itself to cut off Moore’s car. Jackson passed Moore’s car and cut in front of it to stop Moore. The cars collided and Jackson and Williams jumped out as Moore and the passenger in the car, Gerard Burdette, were getting out. At this point, Jackson and Williams fired their weapons. Before firing, however, Jackson said to Moore, ‘No need to run, m f Jackson shot Moore, and Moore ran 100 to 150 yards, at which point he collapsed and died. Jackson drove to where Moore lay, and Jackson’s purpose was to rifle through Moore’s pockets. Barnes and Williams got into Moore’s car and left the scene. They hid the car, and Williams took the stereo from the car. The next day, Jackson wanted to strip the car, and he, Barnes and ‘Fido’ went to where the car was hidden; however, a Mr. Porterfield interrupted them and they left without stripping the car. On this same day, Williams told Jackson that Moore was dead, to which Jackson replied, T don’t give a f_, he didn’t stay where we stayed at.’
“Jackson turned himself in to the Montgomery Police Department after learning that he was wanted for questioning. He gave three conflicting statements to detectives. In the first statement he denied any knowledge of the event. He later said that he was with Deon driving around looking for Cocomo in a stolen car but had no involvement in the murder. In the final statement he admitted that he was at the scene and armed with a .380 pistol; however, he denied shooting Moore.”
Joe Saloom, the State’s firearm expert, testified that the bullet recovered from the victim’s body was consistent with a bullet fired from a .380-caliber gun. Saloom also testified that the bullet could have also been fired from a 9mm gun.

Standard of Review

Jackson is appealing the circuit court’s dismissal of his postconviction petition. Rule 32.3, Ala. R.Crim. P., provides: “The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.” Preponderance of the evidence is defined as
“[t]he greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.”
*435 Black’s Law Dictionary 1220 (8th ed. 2004).
Rule 32.6(b), Ala. R.Crim. P., addresses the pleading requirements in regard to postconviction petitions and provides:
“The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
When addressing the scope of Rule 32.6(b), this Court has stated:
“ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’ Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App. 1993). It is the allegation of facts in pleading which, if true, entitle a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those alleged facts.”
Boyd v. State, 913 So.2d 1113, 1125 (Ala.Crim.App.2003).
Moreover,
“ ‘[T]here exists a long-standing and well-reasoned principle that we may affirm the denial of a Rule 32 petition if the denial is correct for any reason.’ McNabb v. State, 991 So.2d 313, 333 (Ala.Crim.App.2007). That general rule is limited only by due-process constraints that ‘require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense might, if available for consideration, suffice to affirm a judgment.’ Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala. 2003). In the context of Rule 32 proceedings, ‘the language of Rule 32.3 [placing the burden on the State to plead any ground of preclusion in Rule 32.2] ... has created the narrow due-process constraint discussed in Liberty National’ McNabb, 991 So.2d at 334, by making the preclusions in Rule 32.2 affirmative defenses and prohibiting this Court from sua sponte applying those preclusions for the first time on appeal. See Ex parte Clemons, 55 So.3d 348 (Ala.2007). Thus, although the preclu-sions in Rule 32.2 ‘“apply with equal force to all cases, including those in which the death penalty has been imposed,” ’ Nicks v. State, 783 So.2d 895, 901 (Ala.Crim.App.1999) (quoting State v. Tarver, 629 So.2d 14, 19 (Ala.Crim. App.1993)), only if those affirmative defenses are asserted by the State or found by the circuit court may this Court apply them on appeal.”
Bryant v. State, [Ms. CR-08-0405, February 4, 2011] — So.3d -, - (Ala.Crim.App.2011).
I.
As previously stated, we remanded this case for the circuit court to consider Jackson’s claims of juror misconduct. At the evidentiary hearing three jurors testified and one juror was later deposed. The circuit court’s order on remand addressed the juror-misconduct claims related to the four jurors presented by Jackson at the remand proceedings. Other juror-misconduct claims were pleaded in Jackson’s amended postconviction petition; however, no evidence was presented in support of those claims at the Rule 32, *436 Ala. R.Crim. P., evidentiary hearing. “Because it appears that [Jackson] did not present evidence at the evidentiary hearing with regard to [some of Jackson’s juror-misconduct claims], we will conclude that he has abandoned th[o]se claims and we will not review them.” Payne v. State, 791 So.2d 383, 399 (Ala.Crim.App.1999). “[A] petitioner is deemed to have abandoned a claim if he fails to present any evidence to support the claim at the evi-dentiary hearing.” Brooks v. State, 929 So.2d 491, 497 (Ala.Crim.App.2005).
We now address each allegation of juror misconduct individually.
A.
Jackson first asserted that juror J.G.[2] failed to disclose that he owned both a 9mm and a .357-caliber gun at the time of trial and that he “performed outside experimentation by testing the bullets to discover if the type of gun that Jackson was allegedly carrying at the time of the crime could have fired the bullet that killed the victim. These discoveries were then passed along to the jury members....” (R. 656.)
“To prevail on a claim of juror misconduct, the petitioner must establish that he ‘might have been prejudiced’ by the jurors’ failure to respond truthfully to a question posed on voir dire. See Ex parte Stewart, 659 So.2d 122 (Ala.1993).
“‘It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely. See Fabianke v. Weaver, 527 So.2d 1253 (Ala. 1988). However, not every failure to respond properly to questions propounded during voir dire “automatically entitles [the defendant] to a new trial or reversal of the cause on appeal.” Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970); see also Dawson v. State, [710 So.2d 472] at 474 [ (Ala.1997) ]; and Reed v. State, [547 So.2d 596 (Ala.1989) ]. As stated previously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is “whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.” Ex parte Stewart, 659 So.2d [122] at 124 [(Ala.1993)]. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court’s discretion.’
“Ex parte Dobyne, 805 So.2d 763, 771-72 (Ala.2001) (footnote omitted).”
Hooks v. State, 21 So.3d 772, 780-81 (Ala. Crim.App.2008).
“The might-have-been-prejudiced standard, although on its face a light standard, actually requires more than simply showing that juror misconduct occurred. ‘[T]he question whether the jury’s decision might have been affected is answered not by a bare showing of juror misconduct, but rather by an examination of the circumstances particular to the case.’ Ex parte Apicella, 809 So.2d 865, 871 (Ala.2001). Thus, ‘[i]n applying this standard we look at “the temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or in failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.” ’ Hooks, 21 So.3d at 781 (quoting DeBruce v. State, 890 So.2d 1068, 1078 (Ala.Crim.App.2003), overruled on other grounds, Ex *437 parte Jenkins, 972 So.2d 159 (Ala. 2005)).”
Bryant v. State, — So.3d at-. See also Reynolds v. City of Birmingham, 723 So.2d 822 (Ala.Crim.App.1998); Dawson v. State, 710 So.2d 472 (Ala.1997); Ex parte Potter, 661 So.2d 260 (Ala.1994).
“The form of prejudice that would entitle a party to relief for a juror’s nondisclosure or falsification in voir dire would be its effect, if any, to cause the party to forgo challenging the juror for cause or exercising a peremptory challenge to strike the juror. Ex parte Ledbetter, 404 So.2d 731 (Ala.1981); Warrick v. State, 460 So.2d 320 (Ala.Crim.App. 1984); and Leach v. State, 31 AlaApp. 390, 18 So.2d 285 (1944). If the party establishes that the juror’s disclosure of the truth would have caused the party either to (successfully) challenge the juror for cause or to exercise a peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice. Id. Such prejudice can be established by the obvious tendency of the true facts to bias the juror, as in Ledbetter, supra, or by direct testimony of trial counsel that the true facts would have prompted a challenge against the juror, as in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App.1992).”
Ex parte Dobyne, 805 So.2d 763, 772-73 (Ala.2001).
In regard to the introduction of extraneous facts during jury deliberations, we have stated:
“ ‘Extraneous facts introduced in jury deliberations can result in actual prejudice or in prejudice as a matter of law, also called presumed prejudice.’ Ex parte Arthur, 835 So.2d 981, 983 (Ala. 2002). The Alabama Supreme Court in Ex parte Apicella[, 809 So.2d 865 (Ala. 2001),] discussed the differences be-
tween presumed prejudice and actual prejudice:
“ ‘Apicella also argues that we should hold the extraneous material introduced through S.B.’s conversation with T.R. to be prejudicial as a matter of law. Apicella supports this argument with the following language from Knight [v. State], 710 So.2d [511,] 517 [ (Ala.Crim.App.1997) ]:
“ ‘ “ ‘Juror misconduct will justify a new trial ... when from the extraneous facts prejudice may be presumed as a matter of law.’ Whitten v. Allstate Ins. Co., 447 So.2d 655, 658 (Ala.1984).... However, in some cases, ‘the character and nature of the extraneous material [constitute] prejudice as a matter of law and no showing that the jury was in fact influenced thereby in arriving at their verdict is necessary.’ Id. (prejudice presumed as a matter of law from jury’s consulting encyclopedia and dictionary definitions ...).”
“ ‘(Quoting Minshew v. State, 594 So.2d 703, 716 (Ala.Crim.App.1991)).
“ ‘On the other hand, we have also held that “mere exposure to [a] definition does not require a new trial as a matter of law.” Pearson v. Fomby, 688 So.2d 239, 245 (Ala.1997). Our holding in Pearson serves to emphasize the limitations of the doctrine of “prejudice as a matter of law.”
“ ‘Generally, a presumption of prejudice applies only in a case in which the jury’s consideration of the extraneous material was “ ‘crucial in resolving a key material issue in the case.’ ” Dawson v. State, 710 So.2d 472, 475 (Ala.1997) (citing Hallmark v. Allison, 451 So.2d 270, 271 (Ala.1984), and Ex parte Thomas, 666 So.2d 855 (Ala.1995)).
*438 ‘“We are not willing to presume prejudice as a matter of law in this case. No evidence indicates that extraneous information arising from S.B.’s conversation influenced S.B.’s vote or that the information was ever considered by any other member of the jury. This case is distinguishable from cases such as Nichols v. Seaboard Coastline Railway, 341 So.2d 671 (Ala.1976) (prejudice found as a matter of law where juror brought definitions into the jury room during deliberations and copied them onto a chalkboard). We conclude that the particular circumstances of this case provide no basis for finding prejudice as a matter of law.’ ”
Taite v. State, 48 So.3d 1, 9 (Ala.Crim.App.2009), quoting Ex parte Apicella, 809 So.2d 865, 871-72 (Ala.2001).
At the evidentiary hearing, J.G. testified that at the time of Jackson’s trial he owned a 9-millimeter gun and a .357-caliber gun. He testified that he did not compare the bullets for the two guns. J.G. said: “I don’t know if you can interchange each [magazine] or not. I never tried it or anything like that.” (Record on remand, p. 40.) Jackson asked J.G. no questions concerning his responses to voir dire questions.
The circuit court made the following findings in regard to juror J.G.:[3]
“Counsel alleged that [J.G.] owned a nine millimeter but had failed to reveal that at the time of trial. It was also alleged that he owned a .357 and had compared the .357 ammunition to the nine millimeter ammunition. [J.G.] tes-
tified at the evidentiary hearing that he did, in fact, own a nine millimeter and a .357, but he did not know if the ammunition on these weapons was interchangeable. He also stated that he did not ever during jury deliberations of the capital murder case compare these bullets.”
(Supp. R. 6.)
Jackson did not question J.G. concerning his responses or lack of responses to voir dire questions. Our review of the trial record shows that juror J.G. was asked if he owned any guns. (Trial R. 60.)[4] J.G. answered that he had just purchased a 9mm gun. He was then asked if he knew the difference between ammunition for a 9mm gun and ammunition for a .357-cali-ber gun. He answered that he had “never seen a .357 [type of ammunition].” (Trial R. 61.) At the postconviction hearing, J.G. testified that he did not compare the ammunition. Postconviction counsel stated at the hearing that neither of Jackson’s trial attorneys would be testifying at the post-conviction evidentiary hearing.
“[Jackson] is not entitled to relief on this juror-misconduct claim because he neither proffered nor introduced evidence that a true answer by [J.G.] would have caused [trial counsel] to challenge [J.G.] for cause or to exercise a peremptory challenge against [him].”
Ex parte Dobyne, 805 So.2d at 773. See Jones v. State, 753 So.2d 1174, 1203 (Ala.Crim.App.1999) (“[W]e find nothing to indicate that Jones’s trial counsel would have struck [the juror] had he known the information [the juror] revealed at the eviden-tiary hearing.”). Moreover, no evidence was presented at the evidentiary hearing *439 indicating that J.G. had compared the ammunition. Jackson failed to show by a preponderance of the evidence that any juror misconduct occurred as to juror J.G. See Rule 32.3, Ala. R.Crim. P.
B.
Jackson next argued that juror A.W. “[f]ailed to disclose that she has several friends in the Montgomery County Police Department when asked during voir dire.” (R. 653.) Jackson also pleaded that one juror performed an experiment by comparing bullets and passed that information to juror A.W. (R. 656.)
At the evidentiary hearing, A.W. testified on direct examination that the topic of guns did come up during jury deliberations but that she did not remember what juror brought up the topic. A.W. indicated that, based on her recollection, the juror who brought up the topic of guns was not juror J.G. She testified that she has a friend who is a Montgomery police officer but she was not aware that he was an officer at the time of Jackson’s trial. On cross-examination, A.W. stated that one juror mentioned his experience with guns but that he was immediately cut off when another juror indicated that the jury could not consider that information. Also, it was revealed that her friend became a police officer four days before Jackson’s trial and it was possible that A.W. was not aware of this at the time of the voir dire examination. Our review of the trial record shows that jurors were asked if they knew any Montgomery police officers.
The circuit court made the following findings concerning juror A.W.:
“[A.W.] testified at the evidentiary hearing that she did hear that something was heard outside of the jury deliberations; however, she had no knowledge of who said anything or what was said. She also stated that at no time was anything discussed concerning guns that were compared or tested outside of the presence of the jury. In fact, she stated that when a juror brought up about discussing outside evidence, another juror immediately stated that we cannot discuss any outside evidence. [A.W.] was also questioned during jury selection about whether or not she knew any employees with the Montgomery Police Department. She stated at the evidentiary hearing that she could not recall at the time of trial whether or not Officer [Jason] Lachance was working for the Montgomery Police Department or not. She also stated that Officer Lachance was only an acquaintance.”
(Supp. R. 6.)
No evidence was presented at the evi-dentiary hearing indicating that A.W. withheld evidence or that Jackson might have been prejudiced by A.W.’s failure to respond. Neither did Jackson present evidence that his trial counsel would have used one of his peremptory strikes to strike A.W. See Ex parte Dobyne, supra. Jackson failed to meet his burden of proving juror misconduct in regard to juror A.W. See Rule 32.3, Ala. R.Crim. P.
C.
Jackson next argues that juror W.D. failed to reveal during voir dire examination that he had a relative who was in law enforcement. At the evidentiary hearing, W.D. stated that his sixth or seventh cousin was a retired state trooper who lived in Birmingham. On cross-examination, W.D. testified that this distant relationship did not influence his verdict in any way. W.D. was not questioned about his responses or lack of responses to voir dire questions.
The circuit court stated the following concerning juror W.D.:
*440 “The final witness called at the evi-dentiary hearing was [W.D.] who it was alleged failed to reveal during jury selection that he had a relationship with a member of law enforcement. At the evidentiary hearing, [W.D.] stated that he had a distant cousin who was a state trooper; however, this relationship did not influence his decision regarding the trial.”
(Supp. R. 6.)
Our review of the trial record shows that the jurors were asked if they knew anyone employed by the Montgomery Police Department. In the postconviction proceedings, this juror said that he had a distant cousin who had been a state trooper and who had been retired for 10 years and lived in Birmingham. There is absolutely no evidence that W.D. failed to truthfully answer any question posed during voir dire examination or that Jackson might have been prejudiced by W.D.’s responses. Jackson failed to meet his burden of proof in regard to his claim of juror misconduct related to W.D.
D.
Jackson next argues that juror J.B. visited the scene of the crime and shared her findings with the other jurors. He asserted in his original brief that J.B.’s visit to the crime scene triggers the “presumed-prejudice” standard; therefore, he argues, he is entitled to a new trial.
For the postconviction proceedings, the testimony of J.B. was conducted by telephonic deposition. Most of J.B.’s direct examination consisted of her reading an affidavit she had executed in April 2004. The affidavit stated, in pertinent part:
“During the trial, I drove by the Smiley Court area and the area where the shooting occurred. I also drove to the home of Ms. Flowers, where the car theft occurred. It was important for me to see the place where the shooting and the car theft occurred. During the deliberations this information was important and I did not feel that I could not [sic] make a judgment about what happened on the night of the crime before I had visited these places.”
(Record on remand, p. 98.) J.B. testified at the evidentiary hearing that she did not remember going to the Smiley Court area and did not remember anything she might have learned from going there. On cross-examination, J.B. testified that she did not write the affidavit and that her verdict was based on the evidence presented at trial— not any outside evidence.
The circuit court made the following findings concerning juror J.B.:
“The final witness, [J.B.], currently lives in Las Vegas, Nevada, and her deposition had to be taken by telephone. Counsel for both sides conducted telephonic deposition on March 1, 2010, of [J.B.]. During the telephonic deposition, [J.B.] stated that she recalled meeting with counsel for [Jackson] back in 2004 and signing an affidavit. She did not recall who wrote up the affidavit but only that she, in fact, did sign it. The affidavit stated that [J.B.] went to the area of the shooting and the area where the car theft had occurred. She stated that she went to both locations because she was concerned about whether or not [Jackson] was the shooter. During the telephonic deposition, however, [J.B.] stated that she did not recall going to the scene of the crime. She stated that she had been involved in two car accidents and was currently on medication. She went on to state that she did not believe that anything has affected her memory. The Court recognizes that there are inconsistencies regarding [J.B.’s] information; however, there is *441 not conclusive proof as to juror misconduct on her part.
“A defendant who is seeking a new trial on the basis of juror misconduct has the initial burden to prove that a juror or jurors did, in fact, commit the alleged misconduct. See Dawson v. State, 710 So.2d 472 (Ala.1997). The Court heard from three witnesses at the evidentiary hearing and reviewed the telephonic deposition taken of the final juror. The Court did not find that counsel for [Jackson] had presented any alleged misconduct that would warrant a new trial. The Court examined the juror’s answers and conduct from jury selection and did not find any strong evidence of juror misconduct.
“Wherefore, it is ordered that [Jackson’s] request for post-conviction relief for juror misconduct is hereby denied.”
(Supp. R. 6-7.)
First and foremost, when pursuing a claim of juror misconduct, the petitioner must establish that misconduct actually occurred. “A defendant [seeking relief] on the basis of juror misconduct has the initial burden to prove that a juror or jurors did in fact commit the alleged misconduct.” Dawson v. State, 710 So.2d 472, 475 (Ala.1997).
Even if we were to conclude that J.B. did indeed visit the crime scene, there was no testimony presented as to what evidence or insight J.B. gained by that visit. Nor did Jackson prove that J.B. shared her views -with any of her fellow jurors. None of the jurors were asked about this during the evidentiary hearing. In Reed v. State, 547 So.2d 596 (Ala.1989), the Alabama Supreme Court stated:
“We cannot agree with the defendant that the verdict rendered might have been unlawfully influenced, where the results of the home experiment were known only to the one juror who conducted the experiment and that juror remained unaffected by the experiment.”
547 So.2d at 598. Based on the considerations addressed in Taite v. State, 48 So.3d at 9, this case does not present a situation where prejudice is presumed as a matter of law. Jackson failed to meet his burden of proof in regard to the juror-misconduct claim related to J.B. Accordingly, the circuit court did not err in denying Jackson relief on this claim.
We now address the remaining issues raised in Jackson’s original brief to this Court.
II.
Jackson argues that his death sentence should be vacated because the jury unanimously recommended that he be sentenced to life imprisonment without the possibility of parole. He asserts: “Because the trial judge in Mr. Jackson’s case failed to accord the jury’s life verdict the ‘great weight’ to which it was entitled, his sentence violates clear Alabama law as well as the Eighth and Fourteenth Amendments to the United States Constitution.” (Jackson’s brief, at 13.)
In his petition, Jackson pleaded that his sentence of death was contrary to the Alabama Supreme Court’s decisions in Ex parte Carroll, 852 So.2d 833 (Ala.2002), and Ex parte Tomlin, 909 So.2d 283 (Ala. 2003), because, he said, the circuit court failed to give the jury’s unanimous recommendation the strong weight it was due.
The Alabama Supreme Court in Carroll held that a jury’s recommendation of life imprisonment without the possibility of parole in the sentencing phase of a capital trial should be considered a mitigating circumstance by the sentencing judge, the weight of which is dependent on the number of jurors who recommended that sentence. The Court held: “Because of Car *442 roll’s age at the time of the offense, his lack of a significant criminal history, and the recommendation of the victim’s family that he be sentenced to life imprisonment without parole, the jury’s 10-2 recommendation that he not be sentenced to death tips the scales in favor of following the jury’s recommendation.” 852 So.2d at 837.
In Tomlin, the Alabama Supreme Court held that the jury’s unanimous recommendation of a sentence of life imprisonment without the possibility of parole was “overwhelming support” for following the jury’s recommendation given that the court’s only justification for not following the jury’s recommendation was that Tomlin’s codefendant had been sentenced to death. 909 So.2d at 286-87.
The circuit court made the following findings on this claim:
“The Court ... finds that the allegation ... is procedurally barred from postconviction review because it was raised and addressed on direct appeal. Ex parte Jackson, 836 So.2d 979, 988-991 (Ala.2002). Rule 32.2(a)(4), Ala. R.Crim. P., and Alabama caselaw provide that postconviction relief cannot be granted by a reviewing court on an allegation that was raised or addressed on direct appeal. See, e.g., Ex parte Ford, 630 So.2d 113 (Ala.1993), cert. denied, [511 U.S. 1078,] 114 S.Ct. 1664 (1994); Baldwin v. State, 539 So.2d 1103, 1105 (Ala.Crim.App.1988), cert. denied, 539 So.2d 1103 (Ala.1989), cert. denied, [493 U.S. 874,] 110 S.Ct. 206 (1989); Bell v. State, 518 So.2d 840 (Ala.Crim.App.1988), cert. denied, 486 U.S. 1036 (1988).”
(R. 972-73.)
Specifically, Jackson argues that the circuit court failed to consider the jury’s unanimous recommendation as a mitigating circumstance; it failed to consider the great weight the recommendation was entitled to because it was unanimous; and there was no factual support for the court’s failure to follow the jury’s recommendation.
A.
First, although the Alabama Supreme Court’s decision in Carroll was released two months before its decision in Ex parte Jackson, the Supreme Court in its opinion on direct appeal specifically addressed Jackson’s claim that the circuit court erroneously overrode the jury’s unanimous recommendation. The Supreme Court stated:
“We commend the trial court for its thorough sentencing order and especially for its explanation for its override of the jury recommendation. The trial court found two statutory aggravating circumstances: (1) that the capital offense was committed while Jackson was engaged in a robbery or an attempted robbery, and (2) that the capital offense was committed by a person under sentence of imprisonment. The trial court found one statutory mitigating circumstance: that Jackson was 18 years old at the time of the offense. It is evident from the trial court’s sentencing order that it independently weighed the aggravating circumstances and the mitigating circumstance. Additionally, the trial court provided a detailed analysis of its consideration of the jury’s recommendation of a sentence of life imprisonment without the possibility of parole and the reasons it rejected that recommendation and sentenced Jackson to death. There is no evidence in the record before us indicating that bias, passion, or prejudice were factors in the trial court’s imposing the death sentence.”
Ex parte Jackson, 836 So.2d at 990. Two Justices dissented, stating that the circuit *443 court’s decision to override the juror’s unanimous recommendation was improper.
This claim was specifically addressed on direct appeal; therefore, it is procedurally barred in this postconviction proceeding. See Rule 32.2(a)(4), Ala. R.Crim. P.
B.
Second, Jackson asserts that the Supreme Court’s decisions in Carroll and Tomlin apply retroactively to his case and warrant that his death sentence be vacated.
In Bush v. State, 92 So.3d 121 (Ala.Crim.App.2009), we addressed this issue and held that “Carroll and Tomlin do not apply retroactively to cases on collateral review.” 92 So.3d at 132. See also Ferguson v. State, 13 So.3d 418 (Ala.Crim.App.2008).
C.
Last, even if Carroll and Tomlin applied to Jackson’s case, the circuit court complied with the intent of those decisions. When sentencing Jackson to death, the circuit court devoted seven pages of its order to explaining its justification for overriding the jury’s sentencing recommendation. The court stated that it chose not to follow the jury’s recommendation because the jury might have been swayed by the defendant’s family members’ pleas for mercy; the jury could have concluded that the codefendants would be treated differently; the jury could have believed that Jackson did not fire the fatal shot; the jury deliberated for only 35 minutes in the penalty phase; Jackson had a long criminal history although he was only 18 years old at the time of the murder;[5] and the court was privy to information and law that was not available to the jury.[6]
We have upheld a sentencing court’s decision to override a jury’s unanimous recommendation of life imprisonment under similar circumstances. In Doster v. State, 72 So.3d 50 (Ala.Crim.App.2010), we affirmed the circuit court’s override of a jury’s unanimous recommendation of life imprisonment after the sentencing court noted that the jury was not privy to Dost-er’s extensive criminal record and that the jury was very emotional during sentencing after Doster’s mother begged them to spare her son’s life. We stated:
“[W]e are not presented with a situation like Carroll where the court overrode a jury’s 10-2 recommendation for life imprisonment and the defendant had no significant criminal history and the victim’s family requested leniency. Nor is this case similar to the facts presented in Tomlin where the circuit court’s only explanation for overriding the jury’s unanimous recommendation for life imprisonment was that the defendant’s co-defendant had been sentenced to death. ‘We commend the trial court for its thorough sentencing order and especially for its explanation for its override of the jury recommendation,’ Jackson, 836 So.2d at 990, and find no valid legal basis to disturb the court’s override of the jury’s recommendation in this case.”
72 So.3d at 120.
The circuit court complied with Carroll and Tomlin when it meticulously documented why it chose to disregard the jury’s unanimous recommendation of life imprisonment without the possibility of parol and instead to sentence Jackson to *444 death. Jackson was due no relief on this claim.
III.
Jackson next argues that the circuit court erred in summarily dismissing his claims that his counsel was ineffective at the penalty phase of his trial without first affording him the opportunity to present evidence in support of those claims at an evidentiary hearing.
To establish a claim of ineffective assistance of counsel, a petitioner must show: (1) that counsel’s performance was deficient; and (2) that the petitioner was prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
“Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-34, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ See Michel v. Louisiana, [350 U.S. 91], at 101 [76 S.Ct. 158, 100 L.Ed. 83 (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
Strickland, 466 U.S. at 689,104 S.Ct. 2052.
In addressing the full-fact pleading requirements necessary to plead claims of ineffective assistance of counsel, we have stated:
“To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
Hyde v. State, 950 So.2d 344, 356 (Ala. Crim.App.2006).
Neither this Court nor the Alabama Supreme Court has ever held that an evidentiary hearing must be conducted on every postconviction petition that raises a claim of ineffective assistance of counsel. Such a requirement would burden an already overburdened judiciary. “An evidentiary hearing on a coram nobis petition [now Rule 32 petition] is required only if the petition is ‘meritorious on its face.’ Ex paHe Boatwright, 471 So.2d *445 1257 (Ala.1985).” Moore v. State, 502 So.2d 819, 820 (Ala.1986).
““Where a simple reading of the petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit, or is precluded, the circuit court [may] summarily dismiss that petition.” ’ Bishop v. State, 608 So.2d 345, 347-48 (Ala.1992) (emphasis added) (quoting Bishop v. State, 592 So.2d 664, 667 (Ala. Crim.App.1991) (Bowen, J., dissenting)). See also Hodges v. State, [Ms. CR-04-1226, March 23, 2007] — So.3d -, - (Ala.Crim.App.2007) (a postconviction claim is ‘due to be summarily dismissed [when] it is meritless on its face’).”
Bryant v. State, [Ms. CR-08-0405, February 4, 2011] — So.3d -, - (Ala. Crim.App.2011).[7]
In this section of his brief, Jackson also argues that his counsel was ineffective because the funds provided for court-appointed attorneys in capital cases were insufficient. Section 15-12-21, Ala. Code 1975, was amended in 1999, after Jackson’s trial, to remove the cap for attorney fees in capital cases.[8]
When addressing this claim, the circuit court stated:
“In Bui v. State, 717 So.2d 6, 16 n. 9 (Ala.Crim.App.1997), the Alabama Court of Criminal Appeals held:
“ ‘[T]here is a sound legal basis for applying the procedural bars found in Rule 32.2(a) to the appellant’s claim. Most of the usual factors disinclining an attorney from alleging his or her own ineffectiveness are not present in a claim of this nature, because an attorney claiming that he or she was deprived of funds sufficient to mount an adequate defense is not necessarily admitting to having made poor strategic choices or unprofessional mistakes, but is instead asserting that despite the best intentions to act in the client’s behalf, the attorney’s performance has been improperly hampered by forces beyond the attorney’s control. It might be argued, then, that the appellant’s attorneys at trial and on appeal had little disincentive, and ample opportunity, to present a claim that the compensation scheme in § 15-12-21 (d) prevented them from rendering legally effective assistance, if they believed this to be the case.’
“Based on the binding legal authority quoted above, the Court finds that the allegation is procedurally barred from postconviction review because it could have been raised at trial and/or on direct appeal. Rules 32.2(a)(3) and (a)(5), Ala. R.Crim. P.
“Moreover, Jackson raised the substantive issue underlying this allegation of ineffective assistance on direct appeal. Jackson v. State, 836 So.2d 915, 959-960 (Ala.Crim.App.1999). In rejecting Jackson’s argument that the statutory compensation limits on court-appointed attorneys in capital cases violated the United States and Alabama Constitutions, the Aabama Court of Criminal *446 Appeals stated that ‘[t]hese claims have previously been addressed and decided adversely to [Jackson]’). Id. at 959.
“Based on the Alabama Court of Criminal Appeals’ holding, the Court finds that this allegation of ineffective assistance is without merit; therefore it is denied. Rule 32.7(d), Ala. R.Crim. P.”
(R. 873-74.)
In Jackson’s second amended petition, he lists no specific instances where his counsel was ineffective because the compensation paid to court-appointed attorneys was inadequate. As we stated in Smith v. State, 71 So.3d 12 (Ala.Crim.App.2008):
“Smith made only a general claim in his second amended petition that counsel was ineffective because of the inadequate compensation paid to court-appointed attorneys in capital cases. Smith cited no specific instance where counsel’s performance was ineffective based on the statutory cap. ‘The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis must be included in the petition itself.’ Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.2006). Thus, Smith failed to meet his burden of pleading in regard to this claim. See Rule 32.6(b), Ala. R.Crim. P. As we stated in McNabb v. State, 991 So.2d 313, 320 (Ala.Crim.App.2007):
“ ‘[S]ummary denial of this claim was proper because, as the circuit court found, McNabb failed to meet his burden of pleading sufficiently or with specificity facts to support his claim. See, e.g., Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005) (summary denial of claim that counsel was ineffective as a result of inadequate compensation was proper where petitioner failed to allege how counsel’s performance would have been different had the statutory compensation scheme been different).’
“Also, on direct appeal this Court specifically addressed the substantive issue underlying this claim and found no error. We addressed the issue under the preserved-error standard of review. Counsel cannot be held ineffective for failing to raise an issue that has no merit. See Davis v. State, 9 So.3d 539 (Ala.Crim.App.2008) (opinion on remand from the Alabama Supreme Court).”
71 So.3d at 22-23. Thus, this claim was correctly dismissed because it failed to meet the specificity requirements of Rule 32.6(b), Ala. R.Crim. P.
A.
Jackson next asserts that his counsel was ineffective for failing to investigate and present mitigation evidence at the penalty phase and the judicial sentencing phase of his trial.[9] Jackson pleaded that counsel was ineffective for failing to present evidence of his impoverished childhood, evidence that his father was absent from his life when he was a child, evidence that he had sold drugs to make money for his family, and evidence of his mental deficiency.
1.
Jackson first contends that federal and state law recognize a defendant’s right to present evidence at the judicial sentencing hearing and that the circuit court erred in relying on the case of Boyd v. *447 State, 746 So.2d 364, 397 (Ala.Crim.App.1999), to deny relief on this claim.
The circuit court made the following findings:
“As this allegation relates to the judicial sentencing, the Court finds that it is without merit. In Boyd v. State, 746 So.2d 364, 397 (Ala.Crim.App.1999), the Alabama Court of Criminal Appeals addressed the claim that ‘[Boyd’s] trial counsel failed to present a strategy to save his life and that counsel otherwise failed to properly represent him at the sentencing hearing before the trial court.’ The Alabama Court of Criminal Appeals rejected Boyd’s argument because that court had previously found that Boyd’s trial counsel’s efforts at the penalty phase, which resulted in a 7-5 life without parole recommendation, were not ineffective. Id. at 398. In addition, the Boyd Court went on to hold that:
“ ‘Moreover, § 13A-5-47, Ala.Code 1975, governs the determination of sentence by the trial court. Section 13A-5-4.7, Ala.Code 1975, does not provide for the presentation of additional mitigation evidence at the sentencing by the trial court. Therefore, trial counsel did not err in failing to do so.’
“(Emphasis added.) Because Jackson had no right to present additional evidence to the trial court at the judicial sentencing, his trial counsels were not ineffective for failing to do so.”
(R. 925-26.) Jackson contends that the above-emphasized portion of the circuit court’s order quoting Boyd conflicts with current Alabama law.
Recently, in Woodward v. State, 123 So.3d 989 (Ala.Crim.App.2011), we criticized that portion of Boyd cited in the circuit court’s order and stated:
“Woodward argues that the statute limits the evidence that can be admitted at a sentence [hearing] before the judge to only that evidence addressing any part of the PSI [presentence report] that is the subject of a factual dispute. He further argues that § 13A-5-45(d), Ala.Code 1975, stating that probative, relevant evidence shall be received at the sentencing hearing applies only to the sentencing hearing before the jury. Woodward does not cite to any controlling precedent for this proposition. Our research reveals only authority that directly contradicts Woodward’s argument.
“First, the United States Supreme Court has held that a sentencing authority must consider all evidence offered as mitigating, that is, ‘any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.’ Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (footnote omitted). See also Eddings v. Oklahoma, 455 U.S. 104, 114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (‘Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.’). In Alabama the trial judge is the sentencing authority, and the jury’s advisory verdict is a recommendation that is not binding on the judge. § 13A-5-47(a), (e), Ala.Code 1975; Ex parte Carroll, 852 So.2d 821, 826-27 (Ala.2001). If, as Woodward now argues, § 13A-5-47(d) excludes all relevant evidence except that evidence concerning a factual dispute in the PSI, a logical extension of that argument is that no additional mitigation proffered by a defendant could be admitted into *448 evidence at a sentencing hearing before a trial judge unless that evidence, too, concerned a factual dispute in the PSI. Woodward’s interpretation of the statute could result in the exclusion of relevant proffered mitigation and create reversible error because it might deny a sen-tencer relevant information about a defendant’s character or background, in violation of Lockett and its progeny.
“Second, Woodward’s interpretation of the statute is inconsistent with the current practice in capital cases in Alabama. Both parties at the sentencing hearing before the trial judge in a capital case routinely present additional testimony not necessarily related to the PSI. E.g., Ex parte Carroll, 852 So.2d 833 (Ala.2002); McMillan v. State, [Ms. CR-08-1954, Nov. 5, 2010] — So.3d - (Ala.Crim.App.2010); Mitchell v. State, 84 So.3d 968 (Ala.Crim.App.2010); Washington v. State, 106 So.3d 423 (Ala.Crim.App.2007) (opinion on return to remand), rev’d on other grounds, 106 So.3d 441 (Ala.2011); Scott v. State, 937 So.2d 1065, 1071 (Ala.Crim.App.2005). In McGahee v. State, 885 So.2d 191 (Ala.Crim.App.2003), when reviewing a claim that counsel had rendered ineffective assistance when he failed to present additional testimony at the sentencing hearing before the trial judge, we stated: ‘Trial counsel could have called more witnesses at the penalty-phase hearing before the trial judge, with the hope that the additional information would have convinced the trial judge to agree with the jury’s recommendation and to sentence McGahee to life imprisonment without parole.’ 885 So.2d at 221 (footnote omitted). The United States Court of Appeals for the Eleventh Circuit has also recognized that additional evidence may be admitted at the hearing before the sentencing judge. See, e.g., Brownlee v. Haley, 306 F.3d 1043, 1050 (11th Cir.2002) (‘After the jury has returned its advisory verdict at the sentencing phase, the trial judge orders and receives a presentence investigation report, hears further arguments, and may receive additional evidence concerning the aggravating and mitigating factors.’).”
123 So.3d at 1030.
Nonetheless, at the time of Jackson’s 1998 trial, there was no established caselaw concerning the scope of what evidence a defendant could present at the judicial sentencing hearing held pursuant to § 13A-5-47(c), Ala. Code 1975. Boyd was not released until one year after Jackson’s trial, and the decision in Woodward was not released until 2011 — more than 13 years after Jackson’s capital-murder trial. “We will not hold [trial] counsel ineffective for failing to forecast changes in the law.” Nicks v. State, 783 So.2d 895, 923 (Ala.Crim.App.1999).
Jackson also asserts that the circuit court erred in finding, in the alternative, that Jackson was due no relief on his claim that counsel was ineffective for failing to present more mitigation evidence at the judicial sentencing hearing because the claim had no merit.
In McGahee v. State, 885 So.2d 191 (Ala.Crim.App.2003), we stated the following concerning a petitioner’s claim that counsel’s performance at the judicial sentencing hearing was ineffective after the jury had recommended a sentence of life imprisonment without the possibility of parole.
“Postconviction claims that defense counsel should have conducted further investigation and presented additional evidence in mitigation are not uncommon in capital-murder cases. We have previously stated:
“1 “There has never been a case where additional witnesses could *449 not have been called. The appellant presented relatives and personal Mends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more Mends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify. To hold otherwise would clog an already overburdened system with repetitious testimony. The appellant has failed to satisfy either prong of the Strickland test.”
“‘State v. Tarver, 629 So.2d 14, 21 (Ala.Crim.App.1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994).’
“Williams v. State, 783 So.2d 108, 118 (Ala.Crim.App.2000).
‘We have held, ‘Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence.’ Id. at 117.
“Trial counsel could have called more witnesses at the penalty-phase hearing before the trial judge, with the hope that the additional information would have convinced the trial judge to agree with the jury’s recommendation and to sentence McGahee to life imprisonment without parole. The same can be said after any sentencing hearing in a capital case in which a death sentence is imposed after the jury recommended a sentence of life imprisonment without parole.”
885 So.2d at 221. More recently in Hooks v. State, 21 So.3d 772 (Ala.Crim.App.2008), we stated:
“ ‘Appellant’s contention that his trial counsel rendered ineffective assistance of counsel during the penalty phase of the trial is repudiated by the fact that the jury recommended life in this case. Lewis v. State, 398 So.2d 432 (Fla.1981); Douglas v. State, 373 So.2d 895 (Fla.1979). Further, we refuse to find counsel ineffective by relying on the jury recommendation and failing to present further mitigating evidence to the judge. Lewis' ”
21 So.3d at 791, quoting Buford v. State, 492 So.2d 355, 359 (Fla.1986).
Moreover, when examining claims of ineffective assistance of counsel related to the penalty phase of a capital-murder trial, the United States Supreme Court in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), stated:
“In Strickland [v. Washington, 466 U.S. 668 (1984) ], we made clear that, to establish prejudice, a ‘defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.’ Id., at 694. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.”
539 U.S. at 534, 123 S.Ct. 2527. This Court may reweigh the evidence de novo to determine if any prejudice occurred. See Wiggins v. Smith.
At the penalty phase of Jackson’s trial, counsel presented the testimony of Jackson’s girlfriend, Jackson’s mother, Jackson’s father, and Jackson’s aunt. Sonya Ringstaff, Jackson’s girlfriend, testified that at the time of the offense she and Jackson had been dating for about 18 months, that they had a daughter who was 2 months old at the time of his trial, and that the child had never seen her father. *450 She said that she had never seen Jackson act violent toward anyone, that he was truthful, and that he was a “nice young man.” Marilyn Jackson, Jackson’s mother, testified that she had Jackson when she was 19 years of age, that at the time of the murder he lived with her, that Jackson completed the 9th grade and dropped out of school because he was not interested in school, that he was a respectful child who never gave her any trouble, that she had never seen him exhibit any violence toward anyone, and that Jackson had been committed to the custody of the Department of Youth Services on two occasions. She asked the jury to spare her son’s life. Lewis Wendell Taylor, Jackson’s father, testified that, after Jackson was born, he and Marilyn stayed together and tried to provide a decent home for Jackson, that he was not around a lot because, he said, he was always working, that Jackson was intelligent, that he got involved with the wrong group of people, and that Jackson was not a violent person. He concluded his direct examination by asking the jury to spare his son’s life. On cross-examination, Taylor testified that he was incarcerated at the times that Jackson had been committed to the Department of Youth Services. Thelma Owens, Jackson’s aunt, testified that she was Jackson’s maternal aunt, that Jackson was a truthful person, and that Jackson was not a violent person. She asked the jury to spare Jackson’s life and to let him think about what he had done for the rest of his life. Jackson’s attorneys were so effective that the jury unanimously recommended that Jackson be sentenced to life imprisonment without the possibility of parole.
In overriding the jury’s recommendation and sentencing Jackson to death, the circuit court found two aggravating circumstances — that the murder was committed during the course of a robbery and that Jackson was under a sentence of imprisonment at the time of the murder.[10] The court found as mitigation that Jackson was only 18 years of age at the time of the murder. The court specifically noted that it was assigning little weight to this mitigating circumstance. In regard to non-statutory mitigating circumstances, the circuit court found that Jackson voluntarily surrendered to police, that Jackson did not evade his probation officer, that Jackson was truthful to his family members, and that he was not violent toward his girlfriend. The court gave these circumstances “slight weight.” The sentencing court also stated that it considered Jackson’s statement in the presentence report indicating that he was remorseful for what happened. Last, the sentencing court considered the jury’s unanimous advisory verdict of life imprisonment without the possibility of parole, but it concluded that the aggravating circumstances outweighed the mitigating circumstances.
This Court has considered the mitigation evidence that Jackson contends should have been presented and has reweighed that evidence against the evidence that was presented at trial. We conclude that the aggravating circumstances still outweigh the mitigating circumstances and warrant the imposition of the death sentence. Thus, counsel’s failure to present evidence of Jackson’s impoverished childhood, the lack of a father figure, the fact that he sold drugs to help his family, and his mental health[11] had no impact on the *451 sentence in this case. Accordingly, the circuit court did not abuse its discretion in denying relief on this claim.
2.
Jackson next asserts that the circuit court erred in dismissing his other claims of ineffective assistance of counsel in relation to the penalty phase of his capital-murder trial. Specifically, he argues: “[I]t was error for the circuit court to artificially dissect Mr. Jackson’s claim — which is the denial of his Sixth Amendment right to effective assistance of counsel — into various allegations.” (Jackson’s brief, at 51.)
“The claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is an independent claim that must be sufficiently pleaded.” Coral v. State, 900 So.2d 1274, 1284 (Ala.Crim.App.2004), rev’d on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005).
The circuit court correctly considered Jackson’s ineffective-assistance-of-counsel claims individually.
a.
Jackson argues that counsel was ineffective for failing to obtain and to present expert testimony and that the circuit court erroneously dismissed this claim based on its belief that the claim was not sufficiently pleaded.
In his second amended petition, Jackson pleaded, in pertinent part, the following:
“Trial counsel also failed to obtain and present independent expert witnesses at the sentencing phase of Mr. Jackson’s trial. These experts would have reviewed medical, social services, school, mental health, and other institutional records; interviewed Mr. Jackson and members of his family; developed a family history assessment; expressed an opinion as to the connection between Mr. Jackson’s childhood and the behavior for which he was convicted; assisted counsel in understanding and presenting evidence of the effect of Mr. Jackson’s background on this behavior; and testified about his or her findings and conclusions regarding Mr. Jackson’s background, family history, mental health, and history of alcohol and drug abuse.”
(C.R. 57.)
The circuit court made the following findings on this claim:
“In his second amended Rule 32 petition, Jackson argues that the State relied on Leroy Geary’s testimony to prove Jackson was the person in the driver’s seat who shot the victim. (Second Amended Petition on p. 12.) Jackson contends an eyewitness identification expert would have testified that under the conditions at the time, any such identification would have been unreliable.
“Leroy Geary never specifically identified Jackson as the individual that shot the victim. Geary testified he saw gunfire from the driver’s side of a silver car. (R. 199.) It was Jackson’s three co-defendants that testified Jackson drove the car at the time of the murder and that it was Jackson who jumped out of the car from the driver’s seat after the crash. (R. 317, 386, 438.) While Geary’s testimony supported the State’s theory of events, it was far from the only evidence offered by the State to prove that the person in the driver’s side of the car was responsible for murdering the victim.
“Under the facts of this case, the Court finds that even if Jackson’s trial counsel had received funds and retained an eyewitness identification expert to impeach Geary’s testimony, there is no reasonable probability it would have *452 changed the outcome of the guilt phase because of the other overwhelming evidence presented by the State proving Jackson was the shooter. Therefore, Jackson cannot establish his trial counsel’s performance was deficient or caused him to be prejudiced as required by Strickland v. Washington[, 466 U.S. 668 (1984) ].
[[Image here]]
“Jackson does not state in his second amended Rule 32 petition what specific beneficial evidence an investigator or social worker would have uncovered that, if presented by trial counsel, could have resulted in a different outcome during the guilt phase. Instead, Jackson offers only vague and conelusory statements. Jackson does not identify in his second amended Rule 32 petition what specific exculpatory evidence an investigator or social worker could have uncovered that would have been so compelling it could have made a difference in the guilt phase of trial.
[[Image here]]
“Jackson does not fully disclose the factual basis of [his claim that counsel was ineffective for failing to procure a mental-health expert]. His second amended Rule 32 petition does not include any facts which a mental health expert would have uncovered that, if presented by trial counsel, could have resulted in a different outcome during the guilt phase. Further, Jackson does not identify a mental health expert by name nor does he specifically identify a mental impairment he allegedly suffers from.”
(R. 888-92.)
Jackson failed to identify, by name, any experts who could have testified, nor did he identify the content of any expert’s expected testimony. As we stated in Daniel v. State, 86 So.3d 405 (Ala.Crim.App.2011):
“Daniel failed to identify, by name, any forensic or DNA expert who could have testified at Daniel’s trial or the content of the expert’s expected testimony. Accordingly, Daniel failed to comply with the full-fact pleading requirements of Rule 32.6, Ala. R.Crim. P. See McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007) (claim that counsel was ineffective for failing to retain an expert not sufficiently pleaded because expert was not identified); Woods v. State, 957 So.2d 492 (Ala.Crim.App.2004), rev’d on other grounds, 957 So.2d 533 (Ala.2006) (claim of ineffective assistance of counsel not sufficiently pleaded because Woods failed to identify an expert by name).”
86 So.3d at 425-26. Jackson failed to satisfy the full-fact pleading requirements of Rule 32.6, Ala. R.Crim. P.; therefore, this claim was correctly dismissed.
b.
Jackson next argues that counsel was ineffective for failing to object when the robbery element of the capital-murder offense was also used as an aggravating circumstance.
When denying relief on this claim, the circuit court stated:
“Jackson raised the substantive issue underlying this allegation of ineffective assistance of counsel on direct appeal. Jackson v. State, 836 So.2d 915, 958-59 (Ala.Crim.App.1999). The Alabama Court of Criminal Appeals held that ‘[Jackson’s] argument is without merit.’ Id. at 959. Jackson’s trial counsel cannot be found to be ineffective for failing to make an objection for which there was no legal basis. See Bearden v. State, 825 So.2d 868, 872 (Ala.Crim.App.2001) (holding that ‘[c]ounsel could not *453 be ineffective for failing to raise a baseless objection.’).”
(R. 66.)
In his brief, Jackson asserts that the court’s order was erroneous in this regard because, he says, a finding of no plain error on direct appeal “does not automatically foreclose a determination of the existence of prejudice required under Strickland to sustain a claim of ineffective assistance of counsel.” (Jackson’s brief, at 53.) He cites Ex parte Taylor, 10 So.3d 1075 (Ala.2005), in support of this claim.
The Alabama Supreme Court in Ex parte Taylor reversed this Court’s judgment in Taylor v. State, 10 So.3d 1037 (Ala.Crim.App.2004), in part, holding:
“Although it may be the rare case in which the application of the plain-error test and the prejudice prong of the Strickland [v. Washington, 466 U.S. 668 (1984) ] test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under Strickland to sustain a claim of ineffective assistance of counsel.”
10 So.3d at 1078. The circuit court in denying relief on this claim did not rely on this Court’s decision in Taylor. Moreover, this Court may affirm a circuit court’s ruling if is correct for any reason. See McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007).
The substantive claim underlying the claim of ineffective assistance of counsel has no merit. On numerous occasions, this Court has upheld the practice of counting an element of the capital-murder offense as an aggravating circumstance. See Stanley v. State, [Ms. CR-06-2236, April 29, 2011] — So.3d - (Ala.Crim.App.2011); Jones v. State, 946 So.2d 903 (Ala.Crim.App.2006); Barber v. State, 952 So.2d 393 (Ala.Crim.App.2005); McGowan v. State, 990 So.2d 931 (Ala.Crim.App.2003); Smith v. State, 838 So.2d 413 (Ala.Crim.App.2002); Broadnax v. State, 825 So.2d 134 (Ala.Crim.App.2000); Ferguson v. State, 814 So.2d 925 (Ala.Crim.App.2000). “[B]ecause the underlying claims have no merit, the fact that Magwood’s lawyer did not raise those claims cannot have resulted in any prejudice to Magwood.” Magwood v. State, 689 So.2d 959, 974 (Ala.Crim.App.1996). Many other state and federal courts have adopted this reasoning. See State v. Douglas, 72 So.3d 392, 398 (La.App.2011) (“If the substantive issue an attorney failed to raise has no merit, then the claim the attorney was ineffective for failing to raise the issue has no merit.”); Davie v. Mitchell, 547 F.3d 297, 312 (6th Cir.2008) (“If the underlying substantive claims have no merit, the applicant cannot demonstrate that counsel was ineffective for failing to raise those claims on appeal.”); Spicer v. State, 973 So.2d 184, 199 (Miss.2007) (“Because the underlying issue was held to have no merit, [the defendant] cannot show prejudice.”); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir.2001) (“[C]ounsel was not ineffective for failing to raise a nonmerito-rious issue.”); State v. Westeen, 591 N.W.2d 203, 207 (Iowa 1999) (“Counsel is not ineffective when the issue counsel failed to raise has no merit.”); United States v. Arena, 180 F.3d 380, 396 (2d Cir.1999) (“Failure to make a meritless argument does not amount to ineffective assistance.”); Commonwealth v. Pursell, 555 Pa. 233, 262, 724 A.2d 293, 308 (1999) (“We will not find counsel ineffective for failing to pursue a claim that has no merit.”). The circuit court correctly dismissed this claim.
c.
Jackson next argues that his trial counsel was ineffective for failing to argue that *454 his death sentence was disproportionate to the penalty imposed in similar capital-murder cases.
The circuit court stated the following when denying relief on this claim:
“Pursuant to its statutory duty under Section 13A-5-53(b)(3) of the Code of Alabama (1975), the Alabama Court of Criminal Appeals reviewed Jackson’s death sentence to see if it was disproportionate or excessive as compared to other similar cases. Jackson v. State, 836 So.2d 915, 965 (Ala.Crim.App.1999). The Alabama Court of Criminal Appeals held that Jackson’s death sentence Vas neither disproportionate nor excessive.’ Id. The Alabama Supreme Court agreed, holding that ‘we agree with the Court of Criminal Appeals that in this case the punishment of death is not excessive or disproportionate to the penalty imposed in similar cases.’ Ex parte Jackson, 836 So.2d at 990. Jackson’s trial counsel cannot be found to be ineffective for failing to make an objection for which there was no legal basis.”
(R. 935-36.)
On direct appeal, both this Court and the Alabama Supreme Court complied with the statutory obligation under § 13A-5-53(b)(3), Ala.Code 1975, and addressed whether Jackson’s sentence was disproportionate to the sentences imposed in similar capital-murder cases. Both courts found that Jackson’s sentence was not. “Because the substantive claim underlying the claim of ineffective assistance of counsel has no merit, counsel could not be ineffective for failing to raise this issue.” Lee v. State, 44 So.3d 1145, 1173 (Ala.Crim.App.2009).
d.
Jackson next argues that his trial counsel was ineffective for failing to argue that Alabama’s method of execution is cruel and unusual.
The circuit court made the following findings on this claim:
“Jackson was sentenced to death on July 2, 1998. On July 1, 2002, the Alabama Legislature amended Alabama law to provide for execution by lethal injection unless the person elects to be executed by electrocution. Because the method of execution has changed since Jackson’s death sentence was imposed, the Court finds that this allegation of ineffective assistance now is moot. Rule 32.7(d), Ala. R.Crim. P. See Lewis v. State, 889 So.2d 623, 688-689 (Ala.Crim.App.2003).”
(R. 934-35.)
At the time Jackson was sentenced to death, the sole method of execution in Alabama was the electric chair. In 2002, the Alabama Legislature amended § 15-18-82, Ala.Code 1975, to provide that Alabama’s primary method of execution would be lethal injection. This amendment applied to everyone then on Alabama’s death row. Thus, the substantive claim supporting this claim of ineffective assistance of counsel is now moot, and it will not support a claim of ineffective assistance of counsel. Cf. Lewis v. State, 889 So.2d 623 (Ala.Crim.App.2003).
Recently, in Thompson v. State, [Ms. CR-05-0073, February 17, 2012] - So.3d - (Ala.Crim.App.2012), this Court stated:
“Effective July 1, 2002, Alabama’s primary method of execution is lethal injection involving a three-drug protocol. Section 15-18-82.1(a), Ala.Code 1975. Section 15-18-82.1(c), Ala.Code 1975, provides: ‘A death sentence shall be executed by lethal injection, unless the person sentenced to death affirmatively elects to be executed by electrocution.’ Section 15-18-82.1(h), Ala.Code 1975, *455 also provides: ‘In any case in which an execution method is declared unconstitutional the death sentence shall remain in force until the sentence can be lawfully executed by any valid method of execution.’
“The constitutionality of Alabama’s method of execution has been addressed by the United States Supreme Court and the Alabama Supreme Court. In Ex parte Belisle, 11 So.3d 323 (Ala.2008), the Alabama Supreme Court stated:
“ ‘The Supreme Court upheld the constitutionality of Kentucky’s method of execution, Baze [v. Rees], 553 U.S. [35], 62, 128 S.Ct. [1520] 1538 [170 L.Ed.2d 420 (2008)], and noted that “[a] State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard.” Baze, [553 U.S. at 61], 128 S.Ct. at 1537. Justice Ginsburg and Justice Souter dissented from the main opinion, arguing that “Kentucky’s protocol lacks basic safeguards used by other States to confirm that an inmate is unconscious before injection of the second and third drugs.” Baze, 553 U.S. at 114, 128 S.Ct. at 1567 (Ginsburg, J., dissenting). The dissenting Justices recognized, however, that Alabama’s procedures, along with procedures used in Missouri, California, and Indiana “provide a degree of assurance — missing from Kentucky’s protocol — that the first drug had been properly administered.” Baze, 553 U.S. at 121, 128 S.Ct. at 1571 (Ginsburg, J., dissenting).
“ ‘The State argues, and we agree, that Belisle, like the inmates in Baze, cannot meet his burden of demonstrating that Alabama’s lethal-injection protocol poses a substantial risk of harm by asserting the mere possibility that something may go wrong. “Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of ‘objectively intolerable risk of harm’ that qualifies as cruel and unusual.” Baze, 553 U.S. at 50, 128 S.Ct. at 1531. Thus, we conclude that Alabama’s use of lethal injection as a method of execution does not violate the Eighth Amendment to the United States Constitution.’
“11 So.3d at 339.
“Alabama’s method of lethal injection does not constitute cruel and unusual punishment, and Thompson is not entitled to relief on this claim.”
Thompson v. State, — So.3d at - (footnote omitted). Accordingly, the substantive claim supporting the claim of ineffective assistance has no merit; thus, counsel could not be ineffective for failing to raise this issue. See Lee, supra.
e.
Jackson argues that the cumulative effect of the errors at his sentencing hearing denied him a fair trial. Specifically, he argues that the circuit court erred in summarily dismissing this claim pursuant to Rule 32.7(d), Ala. R.Crim. P.
Jackson’s entire pleading in his second amended petition on this claim consisted of the following:
“The errors of counsel during the penalty and sentencing phase, as enunciated above, denied Mr. Jackson his right to a fair trial and accurate sentence determination. The failure of counsel to adequately investigate, prepare, and present evidence in support of a sentence of life without parole resulted in Mr. Jackson’s sentence of death. But for trial counsel’s ineffective representation dur *456 ing the penalty and sentencing phases, Mr. Jackson would be sentenced to life in prison without parole. See Kyles v. Whitley, 514 U.S. 419 (1995) (errors considered cumulatively); Derden v. McNeel, 978 F.2d 1453 (5th Cir.1992) (same). These errors constitute a violation of Mr. Jackson’s rights under the Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law. Wiggins v. Smith, [539 U.S. 510,] 123 S.Ct. 2527 (2003); Williams v. Taylor, [529 U.S. 362,] 120 S.Ct. 1495 (2000); Strickland v. Washington, 466 U.S. 668 (1984). This Court must reverse Mr. Jackson’s sentence of death, and grant a new penalty and sentencing phase of Mr. Jackson’s capital trial.”
(R. 651-51.)
We recently addressed a similar claim in Taylor v. State, [Ms. CR-05-0066, October 1, 2010] — So.3d - (Ala.Crim.App.2010), and stated:
“Taylor ... contends that the allegations offered in support of a claim of ineffective assistance of counsel must be considered cumulatively, and he cites Williams v. Taylor, 529 U.S. 362 (2000). However, this Court has noted: ‘Other states and federal courts are not in agreement as to whether the “cumulative effect” analysis applies to Strickland claims’; this Court has also stated: ‘We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel.’ Brooks v. State, 929 So.2d 491, 514 (Ala.Crim.App.2005), quoted in Scott v. State, [Ms. CR-06-2233, March 26, 2010] — So.3d -, - (Ala.Crim.App.2010); see also McNabb v. State, 991 So.2d 313, 332 (Ala.Crim.App.2007); and Hunt v. State, 940 So.2d 1041, 1071 (Ala.Crim.App.2005). More to the point, however, is the fact that even when a cumulative-effect analysis is considered, only claims that are properly pleaded and not otherwise due to be summarily dismissed are considered in that analysis. A cumulative-effect analysis does not eliminate the pleading requirements established in Rule 32, Ala. R.Crim. P. An analysis of claims of ineffective assistance of counsel, including a cumulative-effect analysis, is performed only on properly pleaded claims that are not summarily dismissed for pleading deficiencies or on procedural grounds. Therefore, even if a cumulative-effect analysis were required by Alabama law, that factor would not eliminate Taylor’s obligation to plead each claim of ineffective assistance of counsel in compliance with the directives of Rule 32.”
— So.3d at -. Jackson failed to comply with the pleading requirements of Rule 32.7(d), Ala. R.Crim. P.; thus, this claim was correctly dismissed.
B.
Jackson next argues that the circuit court erred in summarily dismissing his claims that his counsel’s performance at the guilt phase of his capital-murder trial was ineffective.
Again Jackson argues that the circuit court erred in considering each of his ineffective-assistance-of-counsel claims individually instead of cumulatively.
“[I]t is well settled in Alabama that an ineffective-assistance-of-counsel claim is a general claim that consists of several different allegations or subcategories, and, for purposes of the pleading requirements in Rule 32.3 and Rule 32.6(b), ‘[e]ach subcategory is [considered] a[n] independent claim that must be sufficiently pleaded.’ Coral v. State, *457 900 So.2d 1274, 1284 (Ala.Crim.App.2004), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005).”
Bryant v. State, — So.3d at -. The postconviction court did no err in considering each ineffeetive-assistance-of-counsel claim individually.
1.
Jackson asserts that the circuit court erred in dismissing 12 of his claims of ineffective assistance of counsel on the basis that they lacked specificity.
In this section of Jackson’s brief, Jackson merely recites a laundry list of 12 claims that, he says, the circuit court improperly dismissed.[12] Jackson makes no argument in support of any of the cited claims. This section of Jackson’s brief totally fails to comply with the briefing requirements of Rule 28, Ala. R.App. P. Rule 28(a)(10), Ala. R.App. P., states that the argument section of an appellate brief shall contain the following:
“An argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relief on.”
We note that the plain-error standard of review does not apply to this Court’s review of a postconviction petition where the defendant was sentenced to death. See Ferguson v. State, 13 So.3d 418 (Ala.Crim.App.2008). “[W]e are not required to consider matters on appeal unless they are presented and argued in brief with citations to relevant legal authority.” Zasadil v. City of Montgomery, 594 So.2d 231, 231 (Ala.Crim.App.1991). “Failure to comply with Rule 28(a)(10) has been deemed a waiver of the issue presented.” C.B.D, v. State, 90 So.3d 227, 239 (Ala.Crim.App.2011).
“We are aware that application of Rule 28(a)(10) to find a waiver of arguments in an appellate brief has been limited to those cases in which the appellant presents general assertions and propositions of law with few or no citations to relevant legal authority, resulting in an argument consisting of undeli-neated general propositions unsupported by sufficient legal authority or argument. Although Rule 28(a)(10) is to be cautiously applied, it has been applied recently by the Alabama Supreme Court and by this Court when appropriate. E.g., Ex parte Theodorou, 53 So.3d 151 (Ala.2010); Jefferson County Comm’n v. Edwards, 32 So.3d 572 (Ala.2009); Slack v. Stream, 988 So.2d 516 (Ala.2008); James v. State, 61 So.3d 357 (Ala.Crim.App.2010) (opinion on remand from Alabama Supreme Court); Scott v. State, [Ms. CR-06-2233, March 26, 2010] — So.3d - (Ala.Crim.App.2010); Baker v. State, 87 So.3d 587 (Ala.Crim.App.2009); Lee v. State, 44 So.3d 1145 (Ala.Crim.App.2009); Bush v. State, 92 So.3d 121 (Ala.Crim.App.2009); and Franklin v. State, 23 So.3d 694 (Ala.Crim.App.2008).”
Taylor v. State, — So.3d at -.
Accordingly, Jackson has waived review of the claims merely listed in this section of his brief on appeal.
2.
Jackson next argues that the circuit court confused the burden of pleading -with the burden of proof. Again, Jackson merely recites a laundry list of 12 issues *458 that he states were incorrectly dismissed for that reason. Specifically, he argues: “Mr. Jackson may not ultimately succeed on the merits of his claim is irrelevant at this stage, which only requires that he adequately plead the claim.” (Jackson’s brief, at 61.)
This Court has held otherwise. In Bryant v. State, supra, we stated:
“[A] circuit court may, in some circumstances, summarily dismiss a postconviction petition based on the merits of the claims raised therein. Rule 32.7(d), Ala. R.Crim. P., provides:
“Tf the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. Leave to amend shall be freely granted. Otherwise, the court shall direct that the proceedings continue and set a date for hearing.’ ”
— So.3d at-. We have interpreted Rule 32.7(d), Ala. R.Crim. P., to allow a circuit court to summarily dismiss a post-conviction claim on the merits.[13] “ ‘Where a simple reading of a petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition....’” Bishop v. State, 608 So.2d 345, 347-48 (Ala.1992). The holding in Bishop is routinely cited. See Ex parte Ward, 46 So.3d 898 (Ala.2010); Ex parte Martinez, 75 So.3d 616 (Ala.2009); Ex parte Ward, 46 So.3d 888 (Ala.2007); Ex parte Clemons, 55 So.3d 348 (Ala.2007).
Jackson specifically raises only one issue in this section of his brief. Jackson argues that the circuit court erred in dismissing his claim that his counsel was ineffective for failing to secure a ballistics expert to testify that the fatal bullet could have been fired from either a 9mm gun or a .357-caliber gun.
The circuit court made the following findings on this claim:
“Jackson ignores that such testimony was, in fact, introduced to the jury by his trial counsel. During the cross-examination of Joe Saloom, a firearm expert employed [by] the Alabama Department of Forensic Sciences, [trial counsel] elicited testimony that the bullet recovered from Mr. Moore’s body could have been fired from either a 9 mm pistol or .357 pistol.... The trial court acknowledged in his sentencing order that the evidence also suggested that Antonio Barnes possibly fired the shot that killed the victim....
“Because the testimony that Jackson contends his trial counsel should have presented was, in fact, presented, Jackson cannot establish his trial counsels’s performance was deficient or caused him to be prejudiced as required by Strickland v. Washington.”
(R. 886-88.)
Jackson’s trial record shows that counsel elicited testimony from the State’s expert Joe Saloom that the bullet that *459 fired the fatal shot could have been fired from either a 9mm gun or a .357-caliber gun. “Having elicited this testimony from the State’s experts, it was not deficient performance for counsel not to have secured independent experts.” Miller v. State, 702 N.E.2d 1053, 1063 (Ind.1998). “[I]t is not necessary for defense counsel to retain a defense expert ‘where defense counsel cross-examined the State’s experts to establish the facts necessary for the defense.’ ” Smithers v. State, 18 So.3d 460, 471 (Fla.2009), quoting, in part, Belcher v. State, 961 So.2d 239, 250 (Fla.2007). Accordingly, there is no “material issue of fact or law” that would entitle Jackson to relief; thus, this claim was correctly dismissed.
3.
Next, Jackson argues that the circuit court erred in dismissing many of his ineffective-assistance-of-counsel claims because the substantive issue underlying the claim had been raised and addressed on direct appeal. Again, this section of Jackson’s brief fails to comply with Rule 28(a)(10), Ala. R.App. P. Jackson merely provides a laundry list of 12 issues that, he says, the court erroneously denied because the issues had been addressed on direct appeal.
Jackson argues that his counsel was ineffective for failing to assert his theory of defense, i.e., that the murder was the result of a drug deal gone bad and was not a murder committed during the course of a robbery.[14]
The circuit court made the following findings on this claim:
“Jackson’s assertions his trial counsel were ineffective for not presenting evidence that the murder resulted from a drug deal gone bad is -without merit. Before trial, Jackson’s trial counsel argued that Jackson and the victim were drug dealers and the murder was the result of a drug deal and not a robbery. Trial counsel further explained to the trial court that there was evidence that the victim was also known to sell fake crack. (R. 26-31, 37-38.) The trial court rejected trial counsel’s arguments and granted the State’s motion in limine preventing trial counsel from presenting any such evidence. The trial court’s ruling on the State’s motion in limine was upheld on appeal. The Alabama Court of Criminal Appeals rejected Jackson’s argument after reviewing it for plain error. Jackson v. State, 836 So.2d 915, 929-31 (Ala.Crim.App.1999). The Alabama Supreme Court went further and held ‘the trial court’s grant of the State’s motion in limine did not constitute error, plain or otherwise.’ Ex parte Jackson, 836 So.2d 979, 986 (Ala.2002) (emphasis added). Jackson did not proffer a single new fact in his second amended Rule 32 petition concerning the ‘drug deal gone bad’ theory that has not already [been] heard and rejected by the trial court, the Alabama Court of Criminal Appeals, and the Alabama Supreme Court. Jackson proffers no facts that, if true, would demonstrate his trial counsel’s performance was deficient or caused him to be prejudiced.”
(R. 912-13.)
On direct appeal, Jackson specifically argued that the motive for the murder was retaliation for a drug deal gone bad and that the court’s ruling excluding this evidence prevented him from presenting a defense. However, both this Court and the Alabama Supreme Court affirmed the trial court’s ruling excluding this evidence. “Because the substantive claim underlying the claim of ineffective assistance of coun *460 sel has no merit, counsel could not be ineffective for failing to raise this issue.” Lee, 44 So.3d at 1173. See also Nicks v. State, 783 So.2d 895 (Ala.Crim.App.1999); Magwood v. State, 689 So.2d 959 (Ala.Crim.App.1996).
Jackson further argues that counsel was ineffective for failing to request a jury instruction on the lesser-included offense of robbery. In denying relief on this claim, the circuit court stated:
“On direct appeal, Jackson argued that ‘the trial court should have instructed the jury on the lesser included offense of robbery.’ Jackson v. State, 836 So.2d 915, 938 (Ala.Crim.App.1999). In rejecting Jackson’s argument, the Alabama Court of Criminal Appeals held that ‘[tjhere was simply no rational basis under the evidence presented on which the jury could find [Jackson] guilty of robbery and not guilty of murder.’ Id. at 939. Jackson proffers no facts in his second amended Rule 32 petition that, if presented by his trial counsel to the trial court, would have entitled him to a jury instruction on the lesser-included offense of robbery. See Yarbrough v. State, 841 So.2d 306, 309 (Ala.Crim.App.2002) (holding that ‘[c]ounsel is not ineffective for failing to file a motion for which there is no legal basis’).”
(R. 917-18.)
On direct appeal, this Court specifically addressed the substantive issue underlying the claim of ineffective assistance of counsel and held that there was no reasonable basis for a jury instruction on the lesser-included offense of robbery. Thus, Jackson cannot show that his counsel was ineffective for failing to raise an issue that has no merit. See Lee, supra.
4.
Jackson next argues that the circuit court erred in summarily dismissing several of his ineffective-assistance-of-counsel claims.
First, he asserts that the summary dismissal of his claim that counsel was ineffective for failing to meet with his family members and for failing to interview witnesses was improper.
In his second amended petition, Jackson pleaded the following:
“[T]rial counsel failed to sufficiently meet with Mr. Jackson’s family prior to trial, despite the fact that Mr. Jackson’s mothers and sisters, as well as other family members and friends, possessed information that would have been helpful to his defense.
“Trial counsel did not meet or attempt to interview the State’s witnesses, including the officers and investigators charged with investigating Mr. Moore’s death, did not attempt to meet or locate individuals whose testimony would conflict with the testimony of the codefen-dants in this case, or otherwise undermined the State’s presentation of guilt. These witnesses include but are not limited to: Victoria Moss, Leroy Geary, A.C. Porterfield, Joe Saloom, Andrew Signore, Latiki Denis Williams and other witnesses related to Mr. Moore’s death.”
(R. 597-98.)
The circuit court stated the following concerning this claim:
“Jackson ... proffers no facts in his second amended petition his trial counsel could have discovered from his family and/or friend that would have been admissible to prove the shooting was the result of a drug deal gone bad.
“The Court finds that this allegation of ineffective assistance fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is dismissed.
*461 [[Image here]]
“Jackson makes no attempt to support this allegation with specific facts. Instead, he merely lists six names and makes vague assertions his trial counsel did not interview State witnesses or locate individuals that, he contends, would have provided testimony that would have conflicted with the testimony of his codefendants. Jackson does not proffer what the individuals named or what unnamed ‘other witnesses’ could have said that would have been so compelling it could have possibly made a difference in the outcome of the guilt phase of his trial.
“The Court finds that this allegation of ineffective assistance of counsel fails to meet the specificity and full factual pleading requirements of Rule 32.6(b); therefore, it is dismissed.”
(R. 883-85.) The postconviction court correctly found that Jackson failed to meet the specificity requirements of Rule 32.6(b), Ala. R.Crim. P.[15]
Moreover, “ ‘[T]he failure to interview or take the depositions of the State’s witnesses for impeachment purposes is not prejudicial per se.’” Robitaille v. State, 971 So.2d 43, 72 (Ala.Crim.App.2005), quoting Aldrich v. Waimuright, 777 F.2d 630, 636-37 (11th Cir.1985).
Next, Jackson argues that counsel was ineffective for failing to make a timely application for treatment as a youthful offender. “The Youthful Offender Act is intended to extricate persons below twenty-one years of age from the harshness of criminal prosecution and conviction.” Raines v. State, 294 Ala. 360, 362, 317 So.2d 559, 561 (1975).
The circuit court made the following findings on this claim:
“In its written order in the case action summary, the trial court entered the following order: ‘Upon consideration of the report of the Y.O. [Youthful Offender] investigation ordered, youthful offender status denied. Defendant on probation from cases 95-2366 and 2367 at the time of this offense. William Gordon.’ (C.R. 2.)
“The trial court’s specific findings in denying Jackson’s Youthful Offender Application establishes that even if Jackson’s trial counsel had presented evidence of Jackson’s upbringing and drug use there is no probability, much less a reasonable probability, the trial court would have granted it [Y.O.] Further, as documented in the pre-sentence report, Jackson had an extensive criminal record. (C. 12-18.) Jackson had multiple prior arrests for such felonies as robbery, burglary, theft, and assault. (C. 16-17.) Because of the seriousness of Jackson’s prior convictions, and the failure of boot camp and other punishments to reform his conduct, this Court is convinced beyond any doubt that his Youthful Offender Application would have been denied by the trial court even if his trial counsel had presented the purported evidence contained in his second amended Rule 32 petition.”
(R. 894-95.)
The record of Jackson’s trial shows that counsel filed a youthful-offender application before trial and apologized for not filing it in a more timely manner. (Trial R. 33.) The record shows that an investigation was conducted and that a report was prepared. The circuit court considered the report and Jackson’s prior *462 record and denied youthful offender status. “When deciding whether to grant youthful offender status, it is expected that the nature of the crime charged, along with prior convictions of the defendant, will be considered, as well as any other matters deemed relevant by the court.” Goolsby v. State, 492 So.2d 635, 636 (Ala.Crim.App.1986).
Section 15-19-1, Ala.Code 1975, contemplates that an application for treatment as a youthful offender be made at a point near the commencement of the proceedings and before a defendant has entered a formal plea to the charges. See Clemmons v. State, 294 Ala. 746, 321 So.2d 238 (1975). However, any prejudice to Jackson was cured by the trial court’s retroactive consideration of Jackson’s application for youthful-offender treatment. See Lochli v. State, 565 So.2d 294 (Ala.Crim.App.1990). Accordingly, Jackson suffered no prejudice as a result of counsel’s failure to file his application for youthful-offender treatment in a more timely manner. Cf. Slaton v. State, 902 So.2d 102, 117-18 (Ala.Crim.App.2003) (counsel was not ineffective for failing to apply for youthful-offender status when he knew that the application would be futile). Jackson was due no relief on this claim.
IV.
Jackson next argues that the circuit court erred in dismissing his claim that the State withheld favorable evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he asserts that he should have been given an opportunity to present evidence in support of this claim.
Jackson asserts in his brief to this Court that the State failed to disclose evidence of deals or agreements it had with Jackson’s codefendants, that another investigation had been conducted and the results of that investigation were not disclosed to Jackson, that one of the witnesses at the scene of the crime drew a map for police, and that one of the State’s witnesses had filed a complaint that three black males were on his property. He further asserts that the State failed to disclose interviews with a witness named by one of the codefendants, any test results conducted on the two automobiles that were impounded, and any information of any meetings with Jackson’s girlfriend.
The circuit court stated the following concerning this claim:-
“[T]he Court finds that these allegations fail to state claims upon which relief may be granted because they do not meet the requirements of newly discovered evidence. The Alabama Court of Criminal Appeals has held that a postconviction Brady allegation must meet all five requirements of newly discovered evidence in Rule 32.1(e), Ala. R.Crim. P. See Payne v. State, 791 So.2d 383, 397-98 (Ala.Crim.App.1999). Rule 32.1(e), Ala. R.Crim. P., requires the following elements to be met in a claim of newly discovered evidence:
“ ‘(1) The facts relied upon ’ were hot known by the petitioner or the petitioner’s counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
“ ‘(2) The facts are not merely cumulative to other facts that were known;
“ ‘(3) The facts do not merely amount to impeachment evidence;
“ ‘(4) If the facts had been known at the time of trial or of sentencing, the *463 result probably would have been different; and
“ ‘(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received.’
“Jackson does not mention Rule 82.1(e) in Part III of his second amended Rule 82 petition or acknowledge its requirements. None of the alleged Brady violations pleaded in Part III of Jackson’s second amended petition satisfy the elements for newly discovered evidence. At a minimum, Jackson cannot satisfy the third or fifth requirements of Rule 32.1(e). Even if the allegations in Part III were true, they would not establish that Jackson is innocent of the crime for which he was convicted, but would rather amount to mere impeachment evidence.”
(R. 947-48.)
This Court has repeatedly held that in order to assert a Brady claim in a postconviction petition the petitioner must plead and prove the requirements for newly discovered evidence.[16] See McWhorter v. State, [Ms. CR-09-1129, September 30, 2011] — So.3d - (Ala.Crim.App.2011); Ray v. State, 80 So.3d 965 (Ala.Crim.App.2011); Arthur v. State, 71 So.3d 733 (Ala.Crim.App.2010); Davis v. State, 44 So.3d 1118 (Ala.Crim.App.2009); Smith v. State, 71 So.3d 12 (Ala.Crim.App.2008); Madison v. State, 999 So.2d 561 (Ala.Crim.App.2006); Hunt v. State, 940 So.2d 1041 (Ala.Crim.App.2005).
Jackson failed to plead the requirements for newly discovered evidence. In fact, at a hearing on the petition, he asserted that he did not have to show that this claim was based on newly discovered facts. Clearly, Jackson failed to meet his burden of pleading sufficient facts to meet the specificity requirements of Rule 32.6(b), Ala. R.Crim. P. Thus, this claim was correctly dismissed.
V.
Jackson next argues that he is mentally retarded and that his sentence of death violates the United States Supreme Court’s decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Specifically, he argues that he made a prima facie showing that he is mentally retarded; therefore, he argues, he is entitled to an evidentiary hearing and to an opportunity to prove that claim.
The United States Supreme Court in Atkins v. Virginia held that it is unconstitutional to sentence a mentally retarded defendant to death. The Court left it to the individual states to adopt a definition of mental retardation. Alabama has yet to enact legislation addressing this issue; however, the Alabama Supreme Court in Ex parte Perkins, 851 So.2d 453 (Ala.2002), adopted the most liberal definition of mental retardation as defined by those states that had adopted legislation prohibiting the execution of a mentally retarded defendant. To meet the definition of mental retardation under Perkins, the defendant must: (1) have significantly subaver-age intellectual functioning (an IQ of 70 or below); (2) have significant deficits in adaptive behavior; and (3) these two factors must have manifested themselves before the defendant attained the age of 18. “Atkins applies retroactively to all cases, even those on collateral review.” Smith v. State, 71 So.3d 12, 17 n. 2 (Ala.Crim.App.2008).
*464 In addressing this claim, the circuit court made the following findings:
“Jackson contends that ‘records of the Alabama Department of Corrections in 1997 establish that [he] received a Full Scale IQ score of 75 on a Beta Test.’ (Second Amended Petition on p. 73.) While Jackson argues his IQ score of 75 is evidence of subaverage intellectual functioning, the appellate courts of Alabama have considered similar IQ scores as evidence an individual is not mentally retarded. See, e.g., Ex parte Smith, [[Ms. 1010267, March 14, 2003] — So.3d - (Ala.2003) ] (holding that Smith’s overall IQ of 72 ‘seriously undermines any conclusion Smith suffers from significant subaverage intellectual functioning as contemplated under even the broadest definitions [of mental retardation]’); Peraita v. State, 897 So.2d 1161, 1207 (Ala.Crim.App.2003) (holding that evidence Peraita, at age 19, had an IQ of 75 ‘does not establish [he] had significantly subaverage intellectual functioning1).
“The evidence presented at trial did not raise the slightest inference Jackson suffers significant or substantial deficits in adaptive functioning. Jackson was able to maintain an interpersonal relationship for more than a year with his girlfriend and fathered a child. Jackson lied to police about his role in the victim’s murder and only admitted being at the scene after police lied about finding his fingerprints on a cup. The trial court found in his sentencing order that ‘Jackson was the ring leader in this offense.’ (C.R. 176.) Jackson’s father testified that Jackson ‘was an intelligent young man’ that could do his school [work] but that ‘he wasn’t interested in it.’ (R. 572.) While Jackson’s sixth grade teacher testifying before his Court described Jackson as ‘a low achiever’ in school, she never indicated he suffered from subaverage intellectual functioning or mental retardation. (R. 61.)
“The Court finds that [this] allegation ... is without merit.”
(R. 949-51.) (Emphasis in original.)
An evidentiary hearing on a claim of mental retardation is not necessary in every case. “However, before a circuit court finds a petitioner to be entitled to a hearing under Rule 32.9, the court must find that the petitioner met his or her burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. Rule 32.3, Ala.R.Crim.P.” Fincher v. State, 724 So.2d 87, 89 (Ala.Crim.App.1998). We have held that a hearing is not necessary if it is clear from the record that the defendant does not meet the broadest definition of mental retardation adopted by the Alabama Supreme Court in Perkins. See Ferguson v. State, 13 So.3d 418, 436-37 (Ala.Crim.App.2008).
The record clearly shows that Jackson does not meet the broadest definition of mental retardation. By counsel’s own admission, Jackson’s IQ score is 75. A review of Jackson’s statements to police shows an articulate young man. At the sentencing hearing, Jackson’s father described Jackson as a intelligent young man who was bored with school. The trial court, which had an opportunity to observe Jackson, stated in its sentencing order that there was no evidence indicating that Jackson suffered from any mental disturbance or that he was unable to appreciate the criminality of his conduct. Jackson maintained a relationship and fathered one child.
Jackson does not meet the broadest definition of mental retardation adopted by the Alabama Supreme Court in Ex parte Perkins. Accordingly, Atkins v. Virginia *465 does not bar the imposition of the sentence of death in Jackson’s case, and this claim was correctly summarily dismissed.
VI.
Jackson next argues that Alabama’s method of execution, lethal injection, is unconstitutional and that the circuit court erred in summarily dismissing this claim on the basis that it was insufficiently pleaded.
The circuit court stated the following concerning this claim:
“Jackson does not proffer any facts or legal authority in his second amended Rule 32 petition that, if true, would establish lethal injection as a method of carrying out a death sentence ... violates of the Eighth Amendment or the Alabama Constitution. The Court finds that the allegation regarding lethal injection fails to meet the pleading requirements of Rules 32.3 and 32.6(b); therefore, it is dismissed.
“Alternatively, the Court finds that Jackson’s allegation against lethal injection fails to state a claim upon which relief can be granted because lethal injection has never been found to be cruel and unusual punishment. Rule 32.7(d), Ala. R.Crim. P.”
(R. 970-71.)
Although the circuit court found that this claim was insufficiently pleaded, the court also addressed this claim on its merits. The United States Supreme Court in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), held that Kentucky’s method of lethal injection, a three-drug protocol similar to Alabama’s, was not cruel and unusual punishment. Adopting the decision in Baze v. Rees, the Alabama Supreme Court in Ex parte Belisle, 11 So.3d 323 (Ala.2008), held that Alabama’s method of administering lethal injection was not cruel and unusual punishment in violation of the United States Constitution. This Court recently affirmed that decision. Thompson v. State, [Ms. CR-05-0073, February 17, 2012] — So.3d - (Ala.Crim.App.2012).
VII.
Jackson argues that imposing a death sentence on him is unconstitutional because he was only 18 years of age at the time of the murder. He asserts, for that reason, that his death sentence is cruel and unusual, that it is in violation of Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and that the circuit court erred in finding that this claim was procedurally barred because it could have been raised at trial or on appeal.
The United States Supreme Court in Roper v. Simmons held that it was a violation of the Eighth Amendment to sentence to death a defendant who was under the age of 18 at the time of the offense. Jackson was 18 years of age at the time of the murder.
When addressing this claim, the circuit court found that the issue was procedurally barred. (R. 974.) However, we have held that the United States Supreme Court decision in Roper applies retroactively to all cases on collateral review. See Duncan v. State, 925 So.2d 245 (Ala.Crim.App.2005).
Nevertheless, the circuit court gave alternative reasons for denying relief on this claim and stated:
“Since the second amended petition was filed, the United States Supreme Court issued the opinion of Roper v. Simmons, 543 U.S. 551 (2005). This opinion states that it is unconstitutional to execute juveniles under the age of 18. In the present case, the Defendant Jackson was 18 years old at the time of the *466 offense. Even though he had just turned 18, he was 18.”
(R. 974-75.) (Emphasis omitted.)
The United States Supreme Court in Roper stated its rationale for drawing the line at 18 years of age:
“Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The plurality opinion in Thompson [v. Oklahoma, 487 U.S. 815 (1988) ], drew the line at 16. In the intervening years the Thompson plurality’s conclusion that offenders under 16 may not be executed has not been challenged. The logic of Thompson extends to those who are under 18. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.”
543 U.S. at 574,125 S.Ct. 1183.
Recently we held that the United States Supreme Court’s decision in Roper v. Simmons does not allow this Court to consider the mental age of a defendant but only the chronological age. See Thompson v. State, [Ms. CR-05-0073, February 17, 2012] — So.3d - (Ala.Crim.App.2012). Jackson was 18 years of age at the time of the robbery/murder; therefore, Roper v. Simmons does not bar his sentence of death.
VIII.
Jackson next argues that the circuit court erred in dismissing the remaining claims in his petition. This entire argument in Jackson’s brief consists of merely reciting the names of the individual claims. This section of Jackson’s brief fails to comply with the requirements of Rule 28, Ala. R.App. P. Thus, this issue is waived by Jackson’s failure to comply with Rule 28, Ala. R.App. P.
IX.
Jackson next argues that the circuit court erred in adopting the State’s proposed order denying relief because, he argues, “the circuit court abdicated its responsibility to afford Mr. Jackson meaningful review of his postconviction claims” and “this Court should not defer to the order written by the State.” (Jackson’s brief, at 99.) In this section of his brief, Jackson fails to argue how any of the court’s findings or conclusions adopted by the circuit court were “clearly erroneous.”
“[T]he general rule is that, where a trial court does in fact adopt the proposed order as its own, deference is owed to that order in the same measure as any other order of the trial court. In Dobyne v. State, 805 So.2d 733, 741 (Ala.Crim.App.2000), the Court of Criminal Appeals stated:
“ ‘ “ “While the practice of adopting the state’s proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.’ ” ’
“805 So.2d at 741 (quoting other cases; emphasis added). In McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim.App.2003), the Court of Criminal Appeals stated that ‘even when a trial court adopts verbatim a party’s proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are *467 clearly erroneous.’ Cf. United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964) (expressing disapproval of the ‘mechanical’ adoption of findings of fact prepared by a party, but stating that such findings are formally those of the trial judge and ‘are not to be rejected out-of-hand’).”
Ex parte Ingram, 51 So.3d 1119, 1122-23 (Ala.2010). The Supreme Court further stated in Ex parte Ingram that the general rule did not apply in Ingram’s case because, it said, the court erroneously stated several times in the order that the facts were within the court’s personal knowledge when, in fact, a different judge had presided over Ingram’s trial, and that the errors in the order were so blatant that it was clear that the judge who signed the order did not read the State’s proposed order.
The Supreme Court stated:
“Though the ‘clearly erroneous’ standard of review may apply in cases in which the trial court has adopted, as its own, the proposed order of the prevailing party, the analysis proffered by both the Court of Criminal Appeals and the State fails to admit of the most fundamental and the first requirement: that the order and the findings and conclusions in such order are in fact those of the trial court.”
51 So.3d at 1124. In conclusion, the Supreme Court admonished that “appellate courts must be careful to evaluate a claim that a prepared order drafted by the prevailing party and adopted by the trial court verbatim does not reflect the independent and impartial findings and conclusions of the trial court.” Ingram, 51 So.3d at 1124.
More recently in Ex parte Scott, [Ms. 1091275, March 18, 2011] - So.3d - (Ala.2011), the Alabama Supreme Court reversed the trial court’s judgment and order adopting the State’s answer and denying relief. The Supreme Court stated:
“Here, we do not even have the benefit of an order proposed or ‘prepared’ by a party; rather the order is a judicial incorporation of a party’s pleading as the ‘independent and impartial findings and conclusions of the trial court.’ [51 So.3d] at 1124. The first and most fundamental requirement of the reviewing court is to determine ‘that the order and the findings and conclusions in such order are in fact those of the trial court.’ Id. at 1124. The trial court’s verbatim adoption of the State’s answer to Scott’s Rule 32 petition as its order, by its nature, violates this Court’s holding in Ex parte Ingram.”
— So.3d at -.
In distinguishing the cases of Ingram and Scott, this Court in Miller v. State, 99 So.3d 349 (Ala.Crim.App.2011), stated:
“The fact situation in this case is distinguishable from the fact situations in Ex parte Ingram and Ex parte Scott. Here, the circuit judge who denied Miller’s Rule 32 petition did not preside at Miller’s trial; however, in the order denying Miller’s Rule 32 petition the court did not profess to have personal knowledge of the performance of Miller’s trial counsel. Furthermore, the circuit court in this case did not base its order denying Miller’s Rule 32 petition upon the State’s initial answer to the Rule 32 petition. Rather, after numerous pleadings, and after the evidentiary hearing on Miller’s Rule 32 claims, the court allowed submission of post-hearing briefs.”
99 So.3d at 359.
Other state and federal court have addressed the validity of a trial court’s adoption of a party’s proposed order. The *468 Minnesota Supreme Court has stated that when it reviews the appropriateness of a circuit court’s adoption of a party’s findings as its own, it will “devote special care.” The court stated:
“Dukes relies on Anderson v. City of Bessemer City for the proposition that appellate courts should be ‘extremely leery and circumspect’ of findings prepared by one party and accepted without change by the court. 470 U.S. 564, 572, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In Anderson, the United States Supreme Court criticized the practice of courts adopting verbatim the findings prepared by the prevailing party, particularly if the findings ‘have taken the form of conclusory statements unsupported by citation to the record.’ Id. As the Eighth Circuit explained in Bradley v. Maryland Casualty Co., the problem with verbatim adoption of one party’s findings is that it can make it more difficult to determine whether a court exercised its ‘own careful consideration of the evidence, of the witnesses, and of the entire case.’ 382 F.2d 415, 423 (8th Circuit 1967). We agree that it is preferable for a court to independently develop its own findings. Therefore, when we review a court’s verbatim adoption of one party’s proposed findings, we will heed how the findings were prepared when we conduct a careful and searching review of the record. We will devote special care ‘not in the test that we apply to a particular finding of fact— individual findings will only be reversed if clearly erroneous — but in the volume of evidence we sift in judging the correctness of such findings.... ’ Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395, 1408 (D.C.Cir.1988) (emphasis removed). However, if after such a review we conclude that the findings are not clearly erroneous, the verbatim adoption, standing alone, will not be [ jsufficient grounds for reversal.”
Dukes v. State, 621 N.W.2d 246, 258-59 (Minn.2001).
Our neighboring State of Florida has found no due-process violation in the court’s adoption of the State’s proposed order if the defendant is given notice of the request for proposed orders.
“[T]his Court has rejected similar challenges where the defendant had notice of the request for proposed orders and an opportunity to submit his or her own proposal and/or objections. See, e.g., Patton v. State, 784 So.2d 380, 386-91 (Fla.2000); Groover v. State, 640 So.2d 1077, 1078-79 (Fla.1994). In Groover, for example, this Court held that the trial court’s adoption of the State’s proposed order denying a capital defendant relief on his 3.850 motion did not constitute a due process violation where the trial court signed the State’s proposed order three days after defense counsel received a copy and the defendant had an opportunity to argue all of the issues in his brief and at a hearing. 640 So.2d at 1079. The Court explained that even though the defendant did not have the ability to file his own proposed order, his ability to raise objections negated any due process concerns. See id.; see also Hardwick v. Dugger, 648 So.2d 100, 104 (Fla.1994) (holding that verbatim adoption of State’s proposed order on a capital defendant’s 3.850 motion was not error because both parties stipulated to the filing of post-hearing memoranda, the State served its proposed order on defense counsel months before the trial court signed the State’s order, and defense counsel filed an extensive response to the State’s proposed order).
“On the other hand, this Court has found a due process violation to exist when the defendant was not served with *469 a copy of the State’s proposed order or given an opportunity to file objections. See Rose v. State, 601 So.2d 1181, 1182 (Fla.1992); see also Huff v. State, 622 So.2d 982, 988 (Fla.1993). In contrast to Rose and Huff, in this case Glock’s counsel had notice that the trial court asked the State to prepare a proposed order and Glock submitted objections to the State’s proposed order.”
Glock v. Moore, 776 So.2d 248, 248-49 (Fla.2001).
The United States Court of Appeals for the Eleventh Circuit in Ammons v. Dade City, Fla., 783 F.2d 982 (11th Cir.1986), stated:
“We reiterate here what we have previously said — although we do not approve ‘of the practice of unconditionally adopting findings submitted by one of the parties to the litigation,’ Keystone Plastics, Inc. v. C & P Plastics, Inc., 506 F.2d 960, 962 (5th Cir.1975), the clearly erroneous standard of Rule 52(a)[, Fed. R.Civ.P.,] nonetheless applies to such findings. Id. at 963 (footnote omitted). Our primary concern remains the sub-stantiality of the record evidence to support the district court’s findings, regardless of whether such findings were initially prepared by the court or the prevailing party.”
783 F.2d at 984 n. 4. Other courts to address this issue include the following: State v. Ferguson, 20 S.W.3d 485, 510 (Mo.2000) (“In the absence of independent evidence that the court failed to thoughtfully and carefully consider the claims, ‘there is no constitutional problem with the court adopting in whole or in part the findings of fact and conclusions of law drafted by one of the parties.’”); Raff v. State, 289 Ga. 716, 721, 715 S.E.2d 113, 119 (2011) (“ ‘[W]hen the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.’ Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 572(11), 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). ‘Orders prepared ex parte do not violate due process and should not be vacated unless a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair....’”); Pederson v. State, 649 N.W.2d 161 (Minn.2002) (“A postconviction court’s verbatim adoption of the state’s proposed findings and conclusions, standing alone, does not constitute grounds for reversal.... But the practice of the verbatim adoption of a party’s proposed findings and conclusions is hardly commendable. Our preference is ‘for a court to independently develop its own findings.’ ”).
From a practical standpoint, we appreciate the need for allowing a trial court the flexibility to adopt the State’s proposed order when denying or dismissing a post-conviction petition. The Supreme Court of Indiana in Pruitt v. State, 903 N.E.2d 899, 939 (Ind.2009), considered the validity of the lower court’s adoption of the State’s proposed order denying postconviction relief and aptly stated:
“ ‘It is not uncommon for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. The trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning. We recognize that the need to keep the docket moving is properly a high priority for our trial bench. For this reason, we do not prohibit the practice of adopting a party’s proposed findings.’
“Saylor v. State, 765 N.E.2d 535, 565 (Ind.2002) (quoting Prowell [v. State], 741 N.E.2d [704], 708-09 [ (Ind.2001) ]).
*470 “Therefore, although “we do not encourage post-conviction court judges to adopt wholesale the findings and conclusions of either party, we decline to find bias solely on that basis.’ Saylor, 765 N.E.2d at 565. ‘The critical inquiry is whether the findings adopted by the court are clearly erroneous.’ Id. (citing Woods v. State, 701 N.E.2d 1208, 1210 (Ind.1998) (accepting findings of fact unless they are clearly erroneous, although we give conclusions of law no deference)). Here, even though the PC [post-conviction] court substantially adopted the State’s proposed findings and conclusions, our thorough review of its order throughout this opinion shows that it is supported by the record. The PC court’s findings and conclusions are therefore not clearly erroneous and Pruitt has shown no bias or prejudice in this respect.”
903 N.E.2d at 939.
Here, the circuit court directed Jackson to respond to the State’s proposed order. (R. 589.) At a status hearing in January 2007, the circuit court indicated that it had received the State’s proposed order and inquired as to whether Jackson had any objections to the order. The court then asked if the State and Jackson could come together and agree on an order. The State noted the unlikelihood of that happening, and Jackson objected to the State’s proposed order. The court then stated: “Well, what I’m going to do, I’m going to go ahead and let you object. I’m going to sign the State’s proposed order because I’ve reviewed it, and I will note y’all’s objection.” (R. 80.) Again, the court noted that it “had reviewed the State’s proposed order, and the Court does feel that it is correct and that the court does feel that it’s due to be signed.” (R. 82.) It is clear that the circuit court thoroughly reviewed the State’s proposed order. The State’s order was not adopted in toto; a comparison of the proposed order and the final order shows that the postcon-viction court added paragraphs on pages 5, 6,104,105, and 106 of the State’s proposed order. Based on the circumstances presented in this case, we find no reversible error in the circuit court’s adoption of the State’s order denying Jackson’s postcon-viction petition.
X.
Jackson argues that the circuit court erred in denying his motion for discovery.
There is no right to discovery in a postconviction proceeding. The Alabama Supreme Court in Ex parte Land, 775 So.2d 847 (Ala.2000), held that to be entitled to discovery in a collateral proceeding, the petitioner must first show good cause. The Court stated:
“We agree with the Court of Criminal Appeals that ‘good cause’ is the appropriate standard by which to judge post-conviction discovery motions. In fact, other courts have adopted a similar ‘good-cause’ or ‘good-reason’ standard for the postconviction discovery process. See [State v.] Marshall, [148 N.J. 89, 690 A.2d 1 (1997) ]; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey’s Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that ‘an evidentiary hearing must be held on a [petition for postcon-viction relief] which is meritorious on its *471 face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.’ Ex parte Boatmight, 471 So.2d 1257, 1258 (Ala.1985).”
775 So.2d at 852. The Alabama Supreme Court in State v. Martin, 69 So.3d 94 (Ala.2011), overruled Land insofar as it held that the issue of discovery in a post-conviction petition could be raised and addressed in a mandamus petition. The Court adopted the Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala.2008), standard for addressing discovery claims in a mandamus petition. The petitioner must show that the court clearly exceeded its discretion and that there is no adequate remedy by way of appeal.
In this case, the issue of discovery was litigated in a petition for a writ of mandamus filed by the State. In Jackson v. State, 910 So.2d 797 (Ala.Crim.App.2005), we held that the circuit court erred in granting unlimited discovery and that the court failed to comply with Ex parte Land by first determining whether good cause existed for the disclosure of the numerous requested documents. Jackson then filed a petition for a writ of mandamus in the Alabama Supreme Court. The Supreme Court denied that petition. See Ex parte Jackson, 971 So.2d 748 (Ala.2006).
After this Court released its opinion on the State’s mandamus petition, Jackson filed another motion for discovery. Jackson requested the prosecution’s files for Jackson and his three codefendants related to Moore’s murder. Jackson asserts that this information was necessary to prove his Brady claim. However, Jackson’s Brady claim was barred because Jackson failed to plead the grounds for newly discovered evidence. “[A] claim that is procedurally barred in a postconviction petition clearly is not one that entitled a petitioner to relief.” Hooks v. State, 822 So.2d 476, 481 (Ala.Crim.App.2000).
Second, Jackson asserts that the circuit court erred in denying his request for his entire Department of Human Resources (“DHR”) file because it was relevant to his claim that counsel was ineffective.
In Jackson, we stated that at most Jackson was entitled to limited access to his DHR file. We stated:
“According to our holding in Gibson v. State, 677 So.2d 233 (Ala.Crim.App.1994), the circuit court abused its discretion in allowing Jackson unlimited access to DHR’s files. As we stated in Gibson:
‘“While it is clear that the defendant himself may not peruse the files, this court has said that in cases such as this one, where neither the parties nor the trial court has seen the files requested by the defendant, “[A]n appellant is entitled, upon request, to have the trial court conduct an in camera review of the victim’s complete file maintained by DHR in order to determine whether that file contains any exculpatory information.” Coats v. State, 615 So.2d 1260, 1261 (Ala.Crim.App.1992) (emphasis in the original). See also Pennsylvania v. Ritchie, 480 U.S. [39] at 58, 107 S.Ct. [989] at 1001-02, 94 L.Ed.2d 40 [ (1987) ].’ ”
Jackson v. State, 910 So.2d at 809.
Moreover, information concerning Jackson’s neglect and poverty would have been available from the numerous family members that are cited in Jackson’s second amended postconviction petition. “[A] petitioner fails to show good cause when the information is available through less intrusive sources.” Dunaway v. State, [Ms. CR-06-0996, December 18, 2009] — So.3d -, -(Ala.Crim.App.2009).
*472 Third, Jackson asserts that he was entitled to access to the bullet and shell casings found at the scene. Jackson conceded in his motion that this Court held that he was not entitled to this discovery. We stated:
“Jackson contended in his discovery motion that this access was necessary to support his claim that his trial counsel had been ineffective for failing to procure a firearm expert who would have testified that the projectile recovered from the victim’s body could have been fired from either Jackson’s 9mm pistol or the .357 pistol belonging to one of his codefendants.
“The State contends that Jackson cannot show good cause for access to these items because the State’s expert testified at Jackson’s trial that the bullet recovered from the victim could have been fired from either a 9mm pistol or a .357 pistol.
“A review of the record of Jackson’s trial supports the State’s assertion. This evidence was presented at Jackson’s trial; therefore, Jackson’s claim is without merit. Accordingly Jackson can show no good cause for the disclosure of materials related to this claim. See Hooks [v. State, 822 So.2d 476 (Ala.Crim.App.2000) ].”
910 So.2d at 808.
When denying Jackson’s discovery motion, the circuit court properly considered this Court’s decision in Jackson v. State, 910 So.2d 797 (Ala.Crim.App.2005). We find no reversible error in the court’s ruling regarding discovery.
XI.
Jackson last argues that the cumulative effect of the above-cited errors entitles him to relief. Jackson’s entire argument in brief on this issue, consists of the following:
“The cumulative effect of the errors of state and federal law alleged in this brief (and in Mr. Jackson’s Rule 32 petition) violate Mr. Jackson’s rights to due process and a fair trial protected by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Alabama law.”
(Jackson’s brief, at 104.) This section of Jackson’s brief fails to comply with the requirements of Rule 28, Ala. RApp. P., thus, we deem this issue waived on appeal.
For the foregoing reasons, we affirm the circuit court’s dismissal of Jackson’s petition for postconviction relief.
AFFIRMED.
WINDOM, P.J., and WELCH and KELLUM, JJ., concur.
JOINER, J., concurs in the result.

. We pretermit discussion of Jackson's remaining claims at this time.

. At the evidentiary hearing, the State said that it was not asserting any ground of preclusion. However, in its brief on return to remand, it asserts that the juror-misconduct claims were insufficiently pleaded. The State waived this procedural ground at the eviden-tiary hearing. Moreover, in our opinion remanding this case we found that the claims were sufficiently pleaded.

. We are using initials to protect the anonymity of the jurors.

. The circuit court specifically stated at the evidentiary hearing on the juror-misconduct claims: "[Djon't give me proposed orders because, you know, [the appellate courts] frown on it down the street.” (Record on remand, p. 85.)

. We have taken judicial notice of the record in Jackson's direct appeal. See Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App.1992)-.

. Jackson had three prior felony convictions and was on probation at the time of the murder.

. Specifically, the court noted that it had the benefit of a presentence investigation, additional evidence from the final sentencing hearing, and appellate court decisions to guide it.

. Jackson was represented by different attorneys at trial and on appeal.

. Section 15-12-21, Ala.Code 1975, was amended a second time effective June 14, 2011. This section now provides as follows:
“The total fees paid to any one attorney in any one case, from the time of appointment through the trial of the case, including motions for new trial, shall not exceed the following:
"(1) In cases where the original charge is a capital offense or a charge which carries a possible sentence of life without parole, there shall be no limit on the total fee.”

. Jackson also asserted in his petition that counsel was ineffective for failing to present this evidence at the sentencing hearing before the jury. Jackson does not pursue this claim on appeal.

. He was on probation after having been convicted of burglary, theft, and possessing marijuana.

. The issue of Jackson's mental retardation is specifically addressed in Part V of this opinion.

. We have referred to this practice as “sandbagging." "The practice of providing a ‘laundry list’ or arguments without citation to legal authority smacks of sandbagging, a practice that this Court and the United States Supreme Court have condemned.” Flowers v. State, 799 So.2d 966, 992 (Ala.Crim.App.1999).

. Rule 32.7(d), Ala. R.Crim. P., provides, in pertinent part:
"If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitled the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition.”

. We address only the issue specifically ar- gued in this section of Jackson’s brief.

. Other issues are mentioned in this section of Jackson’s brief and have been addressed in other parts of this opinion.

. In this section of his brief, Jackson also asserts that he was entitled to discovery concerning his Brady claim. That issue is addressed in Part X of this opinion.